THE CHASKA COMPANY Appellant, *vs.* THE BOARD OF SUPERVISORS OF CARVER COUNTY, Respondents.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

The Board of Supervisors of Carver county issued thirteen bonds of said county to the Chaska Company, for the purpose of negotiation, the proceeds to be used in the erection of a Court House. The Company sold one, and hypothecated four others. In an action by the Company against the county, to recover the value of materials and services in the erection of the Court House, *Held,* that the Plaintiff was not estopped from showing that the bonds were of no value.

At the time these bonds were issued, County Commissioners were authorized to issue bonds for the purpose of erecting a Court House and jail, and the bonds are valid and binding upon the county.

The following is the finding of the Court below, upon the issues of law and fact :

This cause came on to be heard and a jury trial being duly waived the same was submitted to the Court for trial and determination. And now having considered the allegations and proofs of the parties, I find the following facts, to-wit : That the said Plaintiff by virtue of an act of the Legislature of the State of Minnesota, approved on the 7th day of March, A.D. 1857, became and still is an incorporated company, and was duly organized by the the election of proper officers according to the provisions of the said act of incorporation ; that afterwards the said Plaintiff acting within the scope of the powers conferred by the said act and in pursuance of its legitimate business, at the special request of the said county of Carver by their legally authorized agents the Board of County Commissioners, entered into an agreement to furnish to said Defendant certain moneys, goods, wares and merchandise to be used in the erection of certain County Buildings within and for said county of Carver upon the following terms and conditions, to-wit : That in consideration that said Defendant would make, issue and deliver to said Plaintiff thirteen bonds for the sum of $1,000 each, payable to one George Fuller or bearer, as follows, to-wit : four of said bonds payable on the first day of July, 1863 ; two of said bonds payable on the first day of July, 1864 ; two of said bonds payable on the

first day of July, 1865; two of said bonds payable on the first day of July, 1866; and the remaining three of said bonds payable on the first day of July, 1867, all bearing interest at the rate of twelve per cent. payable semi-annually on the first day of January and July in each year, with interest coupons attached, at the office of Duncan, Sherman & Co., New York City. That the said Plaintiff would furnish, advance and pay over to said County Commissioners upon demand and in such sums and quantities and at such times as were necessary to the successful prosecution of the work, all the moneys and materials with which to build, furnish and complete in a suitable and perfect manner certain buildings in said county of Carver, to be used and occupied by said county for Court House and Jail, according to certain plans and specifications before and at that time mutually agreed upon. The said Defendants on or about the first day of July, 1857, did make, issue and deliver to said Plaintiff said thirteen bonds of the denomination and payable at the times aforesaid, which were received and accepted by said Plaintiff in full performance of said agreement by said Defendant. That in consideration of the delivery of said thirteen bonds as aforesaid, and as a further assurance to the performance of said agreement by said Plaintiff, the said Plaintiff did agree to negotiate said thirteen bonds for the benefit of said county, and pay over the proceeds thereof upon the order of said County Commissioners, and did enter into a written obligation in the sum of $20,000 to perform said last mentioned agreement as set forth in said answer. That afterwards and in pursuance of said agreements the said Plaintiff did at the times stated in said complaint advance and furnish to said Defendants moneys and materials to the amount and value of $7,509.14. That of the items set forth in said schedule attached to said complaint there was excluded from the amount aforesaid as not proved, sums amounting in all to $2,489.70. I further find that of said thirteen bonds received by said Plaintiff as aforesaid, the said Plaintiff has sold one for $900, and has hypothecated and pledged four others to various parties for the purpose of receiving money, and while said four bonds still remain so pledged—that said remaining eight bonds

are in the possession and under the control of said Plaintiff, not negotiated or disposed of; that said Plaintiff has never offered to return to said Defendants any of said bonds, and said Defendants have never made any formal and proper demand or any demand whatever for the return of the same. That no interest has ever been paid upon said bonds by said Defendants although the same has long since become due and has been often demanded. That after the month of November, 1858, no money or materials were furnished by said Plaintiff for the building and completion of said county buildings, nor was there any demand for money or materials made of said Plaintiff after said month of November, 1858. That said county buildings remain unfinished and not in condition to be used and occupied by said county, and have not been nor are they now so used or occupied. As conclusions of law I find the following to-wit: that it was the duty of said Plaintiff to negotiate said thirteen bonds within a reasonable time after receiving them on the best terms possible, and account to said Defendants for the proceeds thereof. That until said thirteen bonds are negotiated as aforesaid and said Plaintiff is ready to account for the proceeds thereof, or until it appears that said bonds cannot be negotiated and were offered to be returned to said Defendants, the said Plaintiff has no right of action against said Defendants to recover the moneys advanced and the value of the materials furnished under the agreements aforesaid. That having sold one of said bonds and hypothecated four others to secure the payment of money borrowed, the said Plaintiff is estopped from charging or showing that said bonds are of no value. That said Defendants not having demanded since November, 1858, that said Plaintiff furnish any further moneys or materials for the completion of said buildings, and not having demanded the return of said bonds or any of them, is not entitled to claim the value of the same as an offset in this action. That upon the facts found as aforesaid the said Plaintiff is not entitled to maintain this action nor the Defendants to obtain judgment upon the counter claim as set up in said answer. Whereupon it is adjudged that this action be dismissed.

Points and Authorities for Appellants.

I.—The agreement of May 23, 1857, is void *ab initio* for a total want of consideration ; the thirteen bonds being issued contrary to law and of no binding force upon the county of Carver. But the purpose was legal and proper ; see *Rev. Stat.*, p. 153, *sec.* XII (5); but whether good or not,

II.—The agreement of the first of July, 1857, and evidenced by the penal bond, operates as a rescision of it (the one of May 23, 1857), because the company thereby agree and bind themselves to pay over to the county the proceeds of the thirteen bonds, which proceeds constituted the only consideration of the contract of May 23, 1857, and is therefore inconsistant with it. See *Chitty on Contracts*, p. 741, also *note u.*

III.—The parties probably did not intend that result, as is shown by the penal bonds bearing actual date May 20th, 1857 ; thus proving that the original intention of the parties was that the company should receive the thirteen bonds as mere agents for the disposing of and accounting for the same, and not as payment or consideration or a satisfaction for the advancement of the money, &c. However, the effect is the same whether the two instruments evidence one contract or two; the one of July 1st, (May 20th,) nullifies the other, it being a bond to refund the consideration of the other. Therefore,

IV.—The promise to advance means for the building of the county buildings was without consideration and void.

V.—The claim for recoupment is illegal in this. The company are not liable for ceasing to furnish their means upon a void promise ; and (2) they did not promise to furnish except on demand, and the Court below find no such demand.

VI.—The counter claim for the face of the thirteen bonds is illegal, because first, they are nullities void upon their face and of no value to the county. *Story's Eq., Jur.*, 2 *vol, sec.* 700 *a*; *Sedgwick on Damages*, 488. They are not *prima facie* worth $13,000, but are void on their face ; second, there has been no conversion of them alleged or found. There can be no conversion of the thirteen bonds without a breach of the penal bond, and there can be no breach of the penal bond

unless an order of the county board for the proceeds drawn upon the company has been presented for payment and payment refused, but no such order or any demand is found by the Court below.

VII.—Therefore the advances being made under a "*nudum pactum*;" and the claim for recoupment being illegal, and the counter claim both a nullity and premature, the Plaintiff is entitled to the amount proved under the complaint, to-wit: $7,509.14, or a new trial. 8 *Cow.*, 20, 24; 2 *Bosanquet & Puller's Rep.*, 466; 7 *Mass.*, 14, 31; 6 *Mass.*, 81; 22 *Pick.*, 181; *Chitty on Contracts, p.* 624–5.

The finding of the Court below contrary to the pleadings is error of law, a mere misconstruction of the pleadings and contracts.

VIII.—The Plaintiff is not estopped to deny the validity of the thirteen bonds, either by deed or matter "*en pais*;" not by deed, for in neither contract (only the bond is a "deed,") is the validity of the bonds, or any facts showing their validity alleged, so as to render the company liable either at law or equity to the county in an action of covenant or for deceit or for fraud or otherwise. See 13 *Wend.*, 178, 205 6-7-8, (a leading case); *Coke upon Litt.*, 352. The penal bond recites that the Board had directed the issuing of the thirteen county bonds, but it does not recite that they had the power or legal ability to issue them ; nor that they were valid evidences of county indebtedness, when issued ; and estopples "must be a precise affirmation of the matter which maketh the estoppel;" it cannot be taken by argument or inference. See *Co. Litt.*, 352 *a (ante)*. Secondly—the county (this Defendant) is not a party to these instruments or either of them, and unless the county ratifies the transaction (which by law they have not the power to do) it cannot insist upon an estoppel by reason of anything therein. An estoppel by deed only exists between privies.

Not by matter "*en pais*," for the pleadings do not show or admit, nor does the Court below find, that the company made any representation either by word or act, upon which the county have acted or been induced to alter its condition, so that the county could now recover for deceit or fraud, actual

or constructive. See cases *ante.* 3 *Hill.*, 321–2; *DeZill vs. Odell, Cow. & Hill.*, 200.

The company are not estopped by the selling one of the bonds and the hypothecation of four others, unless the county have thereby become liable to the holders for their face. If the company are estopped, it is solely to prevent a circuity of action and a multiplicity of suits, which reason cannot apply unless the county is thereby made liable. But it is not liable for there cannot be a *bona fide* holder of these bonds. They are void upon their face and they carry with themselves notice to every person dealing with them ; the law of this State shows their nullity. It would be otherwise were they void for some secret unseen defect (fraud, usury, &c.,) requiring *aliunde* proof. See cases before cited.

Points and Authorities for Respondent.

I.—The agreement on the part of the County Commissioners (the Defendants) to issue and deliver to the Plaintiff $13,000 in County Bonds, and the agreement on the part of the Plaintiff, that in consideration of the issuing and delivery to them of the bonds, the Plaintiff would advance, furnish and pay over to the Defendants in such sums, and at such times, as were necessary, all the moneys and materials with which to build, finish and complete in a suitable and perfect manner a Court House and Jail, according to certain plans and specifications, before and at the time mutually agreed upon, and the agreement by the Plaintiff to receive and negotiate the bonds for the benefit of the county, and to pay over the proceeds thereof upon the order of the County Commissioners was one and the same contract, which must be taken and considered together, as an entirety.

II.—The Defendants fully performed their part of the contract, by the issuing and delivery of the bonds, and the Court below so find as a conclusion of fact.

The Plaintiffs failed and neglected to perform their part of the contract, in not furnishing the necessary means to finish and complete the buildings, and the Court below so find the facts, and being in default for not performing on their part,

vol vi.—27

they cannot recover for the advances they have made under the contract.

III.—The Plaintiff agreed to accept and did accept the Trust of receiving and selling the bonds for the County, as the Trustees and Agents of the county, and they are estopped in law, upon the facts of the case from denying the validity of the bonds.

IV.—It was the legal duty of the Plaintiff, after receiving the bonds from the county, to use all necessary and proper means and diligence to effect a sale of them, as they had assumed and agreed to do ; if after using proper diligence for that purpose they could not be sold, then the Plaintiff was legally bound to return the bonds, or if sold, to account for them and pay over the proceeds to the county, within a reasonable time, and having failed and neglected to do either for the space of four years, they are clearly liable for the amount of the bonds.

V.—The Defendants were entitled to be allowed on the trial for the face or par value of the bonds, and the interest accrued thereon from their date, because there was no evidence given, or offered upon the trial, to show that the bonds were not worth their face, and the presumption of law is that they were, until the contrary is proved.

VI.—The Court below having found the facts that the Plaintiff had sold one of the bonds, and hypothecated and pledged four others as collateral security upon which they had borrowed money on their own account, that the same remain so pledged, and that the Plaintiff continues to hold the remaining eight bonds, and have often demanded the payment of the interest upon them, it is a conversion in law and in fact, by the Plaintiff, of the whole amount of 'the bonds to their own use, and upon which they are liable to the Defendants for the amount, and after such conversion are estopped from questioning the legality of the bonds.

VII.—The bonds of the county issued and delivered to the Plaintiff, are a proper set-off and legal counter claim to the Plaintiff's demand in the action, and is made so by statute. *Comp. Stat., p.* 541, *sec.* 71; *Act of March* 5, 1853, *page* 4, *secs.* 5, 6.

VIII.—If the Defendants were not entitled to recover the whole amount of the bonds, they are clearly entitled to judgment against the Plaintiff upon the facts found in the case for the balance of the amount of the bonds and interest, after deducting the amount $7,509.14 which the Court below found had been advanced and furnished by the Plaintiff to the Defendants under their contract, and this Court will render such judgment as they find from an examination of the record ought to have been rendered in the Court below. See 18 *N. Y. Rep.*, p. 453, *Day vs. Rath*, and authorities there cited. 1 *Story's Eq. Juris.*, sec. 323; *Same Book*, secs. 466 *and* 468, *and notes*; 2 *Story's Eq. Juris.*, secs. 1268, 1275 *and* 1276.

As to the rule of estoppels, see 3 *Hill.* p. 215, *Dezell vs. Odell*; See also 16 *N. Y.*, 339, *Decker vs. Judson;* 11 *N. Y.*, 102, *Plank Road Co. vs. Thatcher*; 10 *N. Y.*, 303, *Palmer vs. Smith*; 8 *Pick.*, 386, *Cutter vs. Dickinson*; 4 *Pick.*, 219, *Dixall vs. Leadbetter*; 7 *Ind. R.*, 207; 15 *Ind.*, 26, 57, 395.

The question of the validity of these bonds is not involved at all in the issue of fact in the case, and the allegation in the Plaintiff's reply that the bonds were issued without authority and are illegal, presents no issue of fact; it is simply a statement of the pleader's legal opinion, a conclusion of law, and the question cannot be raised and litigated in that collateral manner.

The right to litigate the validity of the bonds belongs to the holders and they alone can rightfully exercise it. It is a subject for adjudication when the holders seek to enforce the payment of the bonds by action, if they are not paid without. But the rights of the holders ought not to be concluded or affected, by making it a collateral question for adjudication in this case, and cannot properly be.

In relation to the amount and value of the bonds as a counter claim set up in the answer, there is but one rule of damages applicable to the facts of the case as they appear in the pleadings and are found by the Court below.

The Defendants are clearly entitled to have allowed them the face or par value of the thirteen bonds with the interest they bear of twelve per cent. per annum. The law holds that they are *prima facie* worth their face in the absence of any

evidence to the contrary ; and no evidence was given on the trial or attempt made to show that they were worth less, or to reduce value, and the finding of the Judge is entirely si- lent upon that point. Nothing in the report of the Judge is said about their value. Therefore the presumption is that they are worth the sum expressed on their face. See *Sedg- wick on damages, p.* 488; 1 *Cow. Rep., p.* 240, *Ingalls vs. Lord;* 2 *Rawle Rep., p.* 242, *Roming vs. Romig;* 2 *Kernan,* (*N. Y.,*) *p.* 313, *Decker vs. Mathews;* 2 *Parsons on Contracts, p.* 471.

Therefore, there having been no evidence given or facts found showing that the bonds were worth less than their face, the Defendants are entitled to their full par value, $13,000, with the interest they bear of twelve per cent. per annum, from their date of July 1st, 1857.

Moses Sherburne and Brisbin & Warner, Counsel for Appellant.

M. E. Ames and Smith & Gilman, Counsel for Respondents.

*By the Court*—Atwater, J.—From the pleadings and find- ing of the Court in this case we are led to believe that both parties entered into the special contract set up in the answer, in good faith, and each believing the Defendants had legal authority to issue the bonds, which should be binding upon the county. The answer avers the bonds were made, executed and delivered in "due form," and were worth the sum of thir- teen thousand dollars. The reply alleges that the Defendants before and at the time of the making of the said bonds, and the delivery of the same, pretended and stated to said Plain- tiff, that they were duly authorized by law to execute and deliver said bonds to the Plaintiff, for the purpose of negotia- tion, and that the same would be of binding force upon the Defendants and upon the county of Carver. But that in fact, said bonds never had any binding force upon Defendants or said county. The validity of the bonds was therefore the principal question of fact at issue. The Defendants seek to escape the liability charged in the complaint, solely on the ground, (so far as appears from the pleadings,) that they have

complied with their contract, in delivering to the Plaintiff thirteen bonds of the par value of $13,000. This is the consideration which they claim to have paid for the Plaintiff's labor, merchandise, &c., (so much as is admitted or proved,) and if they have not paid this consideration, they do not claim to have paid any, and consequently it would seem, must be held liable for the value of the materials furnished by the Plaintiff.

The question of the validity of these bonds however, has not been decided by the Court which tried the case, the Judge holding, "that having sold one of said bonds, and hypothecated four others, to secure the payment of moneys borrowed, the said Plaintiff is estopped from charging or showing that said bonds are of no value." Upon this point we think the learned Judge who tried the case has fallen into an error. The estoppel spoken of by the Judge in his decision is *in pais*, and if any exist, it must be of that kind, as the pleadings disclose none by deed, or record. For the purposes of this case, the definition of an estoppel *in pais*, as given in *Dazell vs. Odell*, 3 *Hill.*, 219, may be deemed sufficiently accurate, to-wit: that there must be, 1st, an admission inconsistent with the evidence which he has proposed to give, or the title or claim which he proposes to set up; 2d, an action by the other party upon such admission ; 3d, an injury to him, by allowing the admission to be disproved. It may be questioned whether any one of these requisites to constitute an estoppel exist in the case at bar; at all events, the last two appear to be entirely wanting. Even if it could be claimed that the disposal of the bonds by the Plaintiff was an assertion by him of their validity and value, to any extent, it does not appear that the Defendant has acted upon or in any respect changed his position in consequence of such admission, and consequently has not been prejudiced by reason thereof. Indeed, from the nature of the case, it would seem that the Defendant could not in any event, be in a position to raise this objection against the Plaintiff, since the bonds originate with the Board of Commissioners, for the very purpose of being negotiated, and if it were possible that the Defendant could be injured by using them for such purpose, it would not lie

in his mouth to complain thereof. It is unnecessary to inquire at present what position the Plaintiff may occupy with reference to the parties to whom he has sold or hypothecated these bonds, as this is not an action to recover their value as against the Plaintiff. As against the Defendant, the Plaintiff is not estopped from showing that the bonds are without value.

As we hold that the Judge who tried the case committed an error upon this question of estoppel, it becomes necessary to examine the main issue raised in the pleadings,—that of the validity of the bonds issued by the Board of Commissioners of Carver county. As this question has never been passed upon, by the Court below, we might appropriately send the case back, for a finding upon it by the Judge who tried the case. But as counsel have argued the question in this Court, and a decision from this Court is desired upon it, and will probably be necessary for its final determination, it will be examined in this connection.

The validity of these bonds is questioned solely upon the ground, (as we understand the argument of counsel,) that the Board of Commissioners of Carver county had no authority to issue them, and that the county is not liable therefor. No objection is raised that they are not in proper form, nor that if the Commissioners have power to execute such instruments, for the purpose mentioned, it has not been properly exercised. Such, at all events, is the issue raised by the reply, which states in this behalf, that "said bonds were issued without the authority of law, that they have not now, and never had any binding force upon said Defendants or upon said county of Carver, that they are totally void and worthless for any purpose whatever." It is therefore to this question of the authority of the Board of Commissioners to issue these bonds, that our examination will be confined.

It appears from the pleadings and finding of the Court, that the Plaintiff, in consideration that the Defendants would make, issue and deliver to the Plaintiff thirteen bonds for the sum of one thousand dollars each, payable to bearer, at the times specified therein, would furnish all the moneys, materials and labor to build and complete a Court House and Jail

in and for said county of Carver. And the Court finds that the Defendant did issue said thirteen bonds as agreed upon, and that the same were received and accepted by said Plaintiff in full performance of the agreement by said Defendants. In other words, these bonds were issued and delivered to Plaintiff, in payment of a Court House and Jail, to be erected and completed by Plaintiff, in consideration of such payment.

The powers and duties of County Commissioners are specified in *Sec.* 13, *p.* 153, *Comp. Stat.*, and it is therein provided among other things, that they shall "provide for the erecting and repairing of Court Houses, Jails, and other necessary buildings for the use of the county." No other authority than this is claimed for the action of the board in issuing these bonds, as no special act of the Legislature was ever passed, authorizing the issue thereof. It will be observed that the section above mentioned, is an amendment of the law previously existing, which read as follows, (*Rev. Stat.*, *p.* 59, *sec.* 13): "The several boards of County Commissioners are authorized and required,—to provide for the erecting and repairing of court houses, jails, and other necessary buildings for the use of the county ; but no tax shall be assessed, nor any debt created for the erection of Court Houses or Jails by said Board, without being first authorized so to do by a vote of the electors of the county." The amendment was adopted March 6, 1852, and is important, as removing a restriction which existed in the law as it was originally passed.

Boards of County Commissioners are public corporations, invested with subordinate legislative powers, to be exercised for local purposes connected with the public good. (*Comp. Stat.*, *p.* 153, *sec.* 6; *Kent's Com.*, *vol.* 2, *p.* 309.) As such, they are subject to the legal rules governing these bodies, and must derive all their powers from the law which creates them, or from some other positive statute. But it is to be understood that a corporation is not limited to the exercise of the powers specifically granted, but possesses in addition all such powers as are either necessarily incident to those specified, or essential to the purposes and objects of its corporate existence.

The statute above cited, authorizes and requires the County

Commissioners to erect court houses and jails and other necessary buildings for the use of the county. The Defendants therefore in entering into the contract for the erection of a court house and jail for the use of Carver county, were engaged in the discharge of one of their legitimate duties, were exercising a power specifically conferred upon them by statute. The statute not only authorizes but absolutely requires them to provide for the erection of these buildings, and there can be no question, that in providing for these buildings they did not exceed the authority vested in them by law.

The only doubt it would seem, which can reasonably arise as to the action of the Commissioners in the premises, is in regard to the manner in which they have exercised their authority, to-wit: in creating a debt for the purpose of erecting these buildings. No specific authority is granted in the statute to a Board of Commissioners to issue bonds or any evidences of debt for this purpose. The objection is not to the form of the instrument, but is based upon the entire want of authority on the part of the Commissioners to bind the county by any written promise to pay *in futuro* for such improvements. I do not think the objection is tenable. The power of corporations in general to make contracts and incur debts in the prosecution of their legitimate business, and to give their promissory note for such indebtedness, would seem to be firmly established, not only by universal practice, but by repeated judicial decision. To attain its legitimate objects, it may deal precisely as an individual who seeks to accomplish the same end. It may contract for labor and materials, and make purchases, and borrow money for such objects, and give notes, bonds and mortgages towards payment. (2 *Kent's Com.*, 278, *note c; Mott vs. Hicks*, 1 *Cow.*, 513; *Moss vs. Oakley*, 2 *Hill.*, 265; *Kelly vs. The Mayor of Brooklyn*, 4 *Hill.*, 263; *Moss vs. McCullough*, 5 *Hill.*, 131; *Attorney General vs. Life and Fire Insurance Co.*, 9 *Paige*, 470; *McCullough vs. Moss*, 5 *Denio*, 567; *Ketcham vs. The City of Buffalo and Austin*, 14 *N. Y.*, 356; 15 *N. Y.*, 9; *Halstead vs. The Mayor &c. of New York*, 5 *Barb.*, 218; *Brady vs. The Mayor of Brooklyn*, 1 *Barb.*, 584; *Angell & Ames on Corp.*, *sec.* 111.

The case of *Ketchum vs. The City of Buffalo*, 14 *N. Y.*, 356, is closely analagous to the one at bar, although the existence of the authority claimed by the corporation in that case, was more questionable than in this.   Under a provision in the charter of the city of Buffalo, authorizing, (not requiring,) the common council to establish and regulate markets, it was held, that the common council was authorized to issue the bond of the city for the purchase of lots on which to establish a market, thus sanctioning the right of the corporation to purchase real estate, and that too on credit, for that purpose.   As the only question here, is as to the right of the Commissioners to create a debt, or use the credit of the county for the purpose of erecting these buildings, the remarks of Selden, J., in giving the opinion of the Court in the case last above cited, are entirely pertinent to the point here in issue. "To deny," says he, "to such corporations the power to use their credit in any case, would scarcely comport with the object for which they are created.  Under such a rule they could not procure materials for the repair of a bridge, unless the money had been raised in advance.  The affairs of no municipal corporation were ever conducted, I presume, without incurring obligations for various purposes, in anticipation of its revenues.  It may be said that there is a distinction between incurring debts for the ordinary and current expenses of the corporation, to be defrayed by the expected annual income, and debts upon an extended credit, for objects of a permanent character, as, for instance, that a debt may be created for the repair of a bridge or market, but not for the erection of, or procuring a suitable site for such market.   I am unable to discover any solid basis for such a distinction, or any definite line by which it could be marked."  The opinion throughout is a clear exposition of the law upon this subject, and the case was decided without a dissenting vote.  The same principles are recognized in *Curtis et als. vs. Leavitt*, 15 *N. Y.*, 9; and in *Barry vs. Merchants' Exchange Company*, 1 *Sand. Ch. R.*, 280.   Nothing opposed to these views was advanced in *School District vs. Thompson*, 5 *Min.*, 280, as that case (so far as the point here in question is concerned,) held that when a promissory note, made by Trustees of a School District, is

vol vi.—28

set up as a cause of action, it must be shown affirmatively, by the party pleading it, to have been given for a debt which the Trustees were authorized to contract.

But the authority of a Board of County Commissioners to create a debt for the purpose of erecting a court house and jail, does not in this case depend alone upon general principles applicable to all municipal corporations clothed with like authority by express statute. The action of the Legislature upon the same subject, previous and subsequent to the enactment of the statute under which these bonds were issued, is important and expressive, and is in effect scarcely less than specific authority by the Legislature to create such debt. It will be observed that by the terms of the original act (as above quoted from the Revised Statutes,) it was provided that "no tax shall be assessed, nor any debt created for the erection of court houses or jails by said Board, without first being authorized so to do by a vote of the electors of the county." This restriction was removed by an amendment in 1852, and as the only purpose of the amendment was the removal of the restriction, no other construction can be reasonably placed upon the action of the Legislature than that it intended the Commissioners should have authority to create a debt for the purpose of erecting these buildings if necessary. This view is strengthened by the consideration of the provisions of "An Act to provide for County Organization and Government," approved February 28th, 1860. (*Sess. Laws* 1860, *p.* 130.) *Sec.* 22 of *Art.* II, of that act provides that "no tax shall be assessed, nor any debt created by said Board for the erection of court houses, jails or other county buildings, without being first authorized by a vote of the electors of the county ;" thus restoring the law as it stood previous to the amendment of 1852, and amounting to at least an indirect expression of the Legislature, that without such amendment the Board of Commissioners had authority to create such debt. This view I think is placed beyond any reasonable doubt, by the last clause of the said section, which declares that "nothing herein contained shall be construed so as to prohibit the issuing of bonds by any county for the purpose of paying debts and liabilities already existing, or to take up bonds or orders already

issued." This section was amended by *sec.* 2 *of chap.* VI, *p.* 47, *Sess. Laws*, 1861, some parts being omitted, but retaining the clause above quoted.

In view therefore of the well settled legal principles applicable to municipal corporations, and especially of the Legislative enactments in this State bearing upon this question, I think the Board of Commissioners of Carver county had undoubted authority to issue the bonds specified in the pleadings, and that, for aught that appears to the contrary, the same are valid and binding upon the county. As the Court has found that these bonds were received by the Plaintiff in full satisfaction of the agreement on the part of the Defendant, and that the Plaintiff has not yet completed the buildings, in accordance with his agreement, he fails to show a cause of action against the Defendant. And, indeed, it is admitted by the Counsel for the Plaintiff that if these bonds are legally binding upon the county of Carver, then the Plaintiff has no cause of action.

The reply alleges that the Defendant at all times since the execution of said bonds, has refused to pay, and still refuses to pay either interest or principal of the same, or any part thereof, and that long before the Plaintiff ceased to make the advances charged in the complaint, the said County Commissioners, by a formal vote when acting for said county of Carver, and by a formal resolution, repudiated said bonds, and decided that they would not pay them, either principal or interest. If the bonds had a legal and valid inception, and were binding upon the county when delivered to the Plaintiff, they could not of course, be invalidated by any such action on the part of the Commissioners. The Court below however, in its finding, is silent as to this allegation, (except as to the refusal to pay interest,) and it is therefore unnecessary to inquire how the Plaintiff may be affected by such action of the Defendant, if the allegation be found true, either as to his duty of negotiating the bonds, or his right to abandon the contract and sue upon the common counts. As the case is here presented, the judgment below must be affirmed.