ELIHU M. BENNETT *vs.* JAMES A. ELLISON.

December 15, 1876.

**Assignment for Benefit of Creditors—Intent to Effect Compromise.**—An assignment, by a debtor, of his property, purporting to be for the benefit of his creditors, and fair on its face, if in fact executed by the assignor with the intent and for the purpose of thereby effecting a compromise with his creditors, is void, even though the assignee have no notice of such intent.

The plaintiff, as assignee of one James P. McClelland for the benefit of creditors, brought this action to recover the value of a large amount of personal property, taken from plaintiff's possession and sold by the defendant, as sheriff, by virtue of certain executions against the property of McClelland. In his answer the defendant assailed the assignment as made with intent to hinder, delay, and defraud the assignor's creditors.

At the trial in the district court for Olmsted county, before *Mitchell*, J., the defendant introduced evidence tending to prove that, shortly before the assignment, McClelland, being insolvent, and largely indebted to various persons—among others to the firm of E. M. & D. C. Bennett, of which the plaintiff was a member—arranged with plaintiff that he, McClelland, should, if possible, effect a compromise with all his creditors, upon the basis of 50 cents on the dollar, cash in hand, except the debt due E. M. & D. C. Bennett; that, if the compromise was effected, the plaintiff should furnish McClelland the money necessary to carry it out, which advances, together with the debt due E. M. & D. C. Bennett, were to be paid in full by McClelland; that, pursuant to the arrangement, McClelland attempted, through an agent, to effect the compromise; that a majority of his creditors agreed to accept it, but others refused; and that, on learning that the acceptance of the compromise had not been obtained, he made to plaintiff the assignment in question. The defendant also introduced evidence tending to

prove that McClelland made the assignment with intent thereby to bring about a consummation of the proposed compromise, and with expectation and intent that the execution of the assignment would and should induce and influence his creditors to accept the proposed compromise, and take 50 cents on the dollar in full satisfaction of their claims.    The defendant also introduced evidence tending to prove that plaintiff knew all these facts at and prior to his acceptance of the assignment.    The plaintiff introduced evidence tending to rebut that of defendant.

In the schedule, forming part of the assignment, McClelland's assets were stated at $13,675, and his liabilities at $19,982.40, the debt to E. M. & D. C. Bennett being $8,000, and the remainder being divided among nineteen different creditors.

The plaintiff requested the court to give the jury the following instructions, each of which was refused, and due exceptions taken:

" 1. An assignment of property which will not actually have the effect of unlawfully hindering or delaying, or of defrauding, the creditors of him who makes the assignment, is a lawful and valid transaction as against such creditors, and the intentions of the person who makes such assignment, in making the same, are wholly immaterial.

" 2. An assignment made by an insolvent debtor, of all his property, for the equal and ratable benefit of all his creditors, will not operate to unlawfully hinder or delay, or to defraud, any such creditor, unless there be an unreasonable delay in converting the property into money and dividing the same among the creditors, or unless some part of the assigned property be diverted to the use of the debtor, or to some other use which will prevent it being converted into money within a reasonable time, and divided among the creditors.

" 3. An assignment by an insolvent debtor, of all his property, for the equal and ratable benefit of all his cred-

itors, will be valid unless made with the intent that there shall be unreasonable delay on the part of the assignee in converting the assigned property into money and dividing the same among the creditors, or unless made with the intent that some part of the assigned property shall be diverted to the use of the debtor, or to some other use which will prevent it being converted into money, without unreasonable delay, and divided among the creditors.

" 4. An assignment made by an insolvent debtor, of all his property, for the equal and ratable benefit of all his creditors, is not invalid because made with the belief, on the part of the debtor and assignee, that it will influence the creditors to compromise with the debtor, and release him from their debts, unless it be further intended to make the right of creditors to share in the estate to depend upon their acceptance of the compromise and their release of the debtor.

" 5. The assignment in question in this case is valid unless, when it was executed, it was intended, on the part of McClelland at least, that, in case no compromise with the creditors should result, there should be unreasonable delay in converting the property into money, and in dividing the same among the creditors; or that a part of the property should be diverted to the use of McClelland, or to some other use which should prevent it being converted into money without unreasonable delay, and divided among the creditors.

" 6. If, when the assignment in question in this case was executed, McClelland and Bennett both believed that the creditors would be materially, or even strongly, or even effectually, influenced thereby to compromise with McClelland and release him from his debts, that fact did not affect the validity of the assignment.

" 7. If the jury believe that the assignment was executed by McClelland with the intention and for the purpose sworn to by him upon the trial—that is to say, for the purpose of

influencing his creditors to compromise with him—they must find for the plaintiff.

"8. If an assignment by an insolvent debtor of all his property, for the benefit, equally and ratably, of all his creditors, should be made with the intent to hinder, delay or defraud his creditors, that fact would not render the assignment invalid, unless the assignee, when he took the assignment, should have notice of such intent on the part of the assignor."

The plaintiff's counsel also requested the court to instruct the jury that the mere fact that, when the assignment was made, McClelland and Bennett believed that it would influence the creditors of McClelland to compromise with him would not render the assignment fraudulent; which instruction the court refused, and instructed the jury as follows, the plaintiff excepting:

"The mere fact that McClelland and Bennett, or McClelland alone, still entertained the hope or expectation that the proposed compromise would be consummated, notwithstanding the making the assignment, would not render the assignment void, provided McClelland's intent in making the assignment was not thereby to induce, influence, and coerce his creditors to accept the proposed compromise; but, as I have said before, if McClelland's intent in making the assignment was that it should operate to induce or coerce creditors to accept the proposed compromise, it would be void."

The following instructions were given at defendant's request, the plaintiff duly excepting:

"1. As to the assignment under which the plaintiff claims in this case, there is but a single question for you to pass upon, viz. : What was McClelland's intent and purpose in making it? The intent with which Bennett received the assignment is immaterial.

"2. If the jury find McClelland made the assignment with the intent and for the purpose of effecting a compromise with his creditors, or for the purpose of facilitating

one already commenced, then the assignment is void, and you must return a verdict for the defendant.

" 3. Bennett, under this assignment, does not stand in the position of a purchaser for valuable consideration; and the fact (if such be the case) that he had no knowledge that it was McClelland's intention, in making the assignment, to effect a compromise with his creditors cannot cure the effect of such intention on McClelland's part. If such intention existed on McClelland's part, at the time he executed the assignment, it is void, no matter whether Bennett knew McClelland's intention or not, and your verdict should be for the defendant."

The court, also, among other things, instructed the jury as follows, the plaintiff duly excepting :

" If the real object or intent of McClelland in making this assignment was not the one expressed on its face, but to induce, persuade, or force creditors to agree and consent to a compromise which he was then attempting to make with his creditors, at 50 cents on the dollar, then, and in such case, the assignment was fraudulent and void as to creditors.

" If McClelland executed the assignment with such fraudulent intent, it would be void as to creditors, even although Bennett, the assignee, had no notice or knowledge of such fraudulent intent at or prior to the time he accepted the assignment."

The jury found a general verdict for the defendant, and an affirmative answer to the following question : Did the assignor, McClelland, make this assignment with the intent and for the purpose of thereby effecting a compromise with his creditors? Judgment was entered on the verdict, and plaintiff appealed.

*Charles C. Willson* and *Gilman, Clough & Lane*, for appellant.

An act, to be tortious, must proceed from a wrongful design to injure another, or a wrongful disregard of the rights of others, and it must be one which will have the effect to

actually injure another, or in some way to actually impair his rights. 1 Addison on Torts, 2.

Conveyances of property by persons owing debts form no exception to the rule that the law does not regard wrongful designs unless they occasion harmful acts ; and, if a creditor's legal rights in the collection of his debt are not impaired by a transfer of his debtor's property, it can make no difference to him what was the debtor's motive, or what he thought would be the effect of the transfer. Bump on Fraud. Con. 360.

The validity of this assignment must be tried by the laws of the state—*i. e.*, by the common law as affirmed by the statutes of Elizabeth—since there is no statute of the state relating to transfers of personal property made with intent to hinder, delay, or defraud creditors. Gen. St. *c.* 41, title 3. Neither the common law nor the statutes of Elizabeth require more of a debtor than that he should unreservedly devote all his property to the payment of his just debts. When a debtor has done this he has fulfilled his moral and legal obligations to his creditors. Bump on Fraud. Con. 359. The debtor may lawfully exhaust his entire property in payment of a single creditor if he has not more than enough to pay that one, and he may lawfully do this for the very purpose of defeating the collection, by some other creditor, of his demand. Bump on Fraud. Con. 213, 220, 221, 226, 426, 441. *Holbird* v. *Anderson*, 5 Term Rep. 235 ; *Wood* v. *Dixie*, 7 Q. B. 892 ; *Darvill* v. *Terry*, 6 H. & N. 807 ; *Hartshorn* v. *Eames*, 31 Me. 93 ; *Banfield* v. *Whipple*, 14 Allen, 13. And in this respect there is a clear distinction between conveyances made by way of payment of debts and those to third parties for a new consideration. *Hartshorn* v. *Eames*, 31 Me. 93.

An assignment of all his property by a debtor, for distribution among his creditors, will be valid as against all of them if there be no beneficial control reserved to the debtor, and no unreasonable delay in converting the prop-

erty into money and distributing it. It does not matter that the effect of such transfer is to prevent the assignor's creditors from seizing the property transferred. To prevent this is the very purpose of all such transfers, and the validity of a general assignment by an insolvent debtor, for the benefit of his creditors, is not affected by the fact that it was made with the express design to defeat the execution of some particular creditor. Even a stratagem to prevent an execution until an assignment can be made will not make the assignment void. Bump on Fraud. Con. 358–360; *Riches* v. *Evans*, 9 C. & P. 640; *Crawford* v. *Austin*, 34 Md. 49; *Wolverhampton Bank* v. *Marston*, 7 H. & N. 148.

Such a general assignment, without preferences, is not merely lawful, but strictly accords with the fundamental principles of equity and fair dealing, and is to be commended, and not condemned; and it must follow that an insolvent may rightfully resort to such an assignment to accomplish any lawful purpose—*e. g.*, to effect a compromise with his creditors. For an insolvent debtor to compromise with his creditors, and secure releases of their demands against him, is both moral and lawful, and is in the highest degree consistent with public policy. Few commercial communities have long existed without providing, by bankrupt and insolvent laws, for the discharge of such debtors from their existing obligations, and thereby restoring them to the ranks of the productive citizens of the state. Such laws spring less from compassion for the unfortunate debtors than from enlightened views of public interest.

It being a lawful and politic thing for a debtor to effect a compromise with his creditors, he may lawfully influence his creditors to enter into such compromise by any act which is in itself harmless toward such creditors, and lawful; and one of the means to which he may lawfully resort, to effect such a compromise, is a general assignment, such as is described in the plaintiff's requests for instructions. In such a proceeding there is nothing like coercion of creditors

into discharging their claims. The debtor merely gives them the choice between taking a specified *per centum* of their claims in full, and taking a fair and equitable share of all his present property, to be paid them within a reasonable time, looking for the residue to the possible future earnings of a man loaded with debts. The choice of the creditors between these alternatives is entirely free. There can be nothing immoral or unfair in a debtor holding out these alternatives to his creditors, and (in the absence of a bankrupt or insolvent act) his power to do so is that which alone makes any compromise with his creditors possible. If he could not set on foot a plan of compromise without keeping his property in his own hands, his offer of compromise, involving necessarily a confession of insolvency, would merely start a race of diligence among his creditors, with the result of satisfying the claims of a few by the sacrifice of all his assets, leaving the great bulk of the debts unpaid and the debtor with no money to pay them—a state of things equally injurious to the creditors and the debtor.

Again, if a debtor, making a general assignment, were obliged to wait until the estate had been wound up, and the proceeds distributed, before daring to think of a compromise with his creditors, his means for carrying out any compromise would be gone ; he would have nothing to offer, and, hence, no compromise would be possible.

One of the most powerful incentives to compromising with an insolvent debtor is the feeling of creditors that they all are, and will be, on an equal footing in respect of the debtor's assets—that no one of them can sweep the assets from the rest. This perfect equality is produced by such an assignment, and is produced in a manner much more economical and effectual, and more beneficial to creditors, than by a resort to expensive and destructive proceedings in bankruptcy. Hence, every such assignment must, from its fairness and equity, operate as a strong inducement to creditors to compromise with their debtor, who, on his part, has a perfect right to expect that such will be its effect, and

to make it in that expectation. It is believed that no insolvent debtor ever made a general assignment for the benefit of his creditors who was not prompted by the feeling that to do so just an act would better his own condition; and it is monstrous to deny to an insolvent debtor the right to consider whether he will be benefited or harmed by a fair assignment of his property. The very reason why such general assignments are made by insolvent debtors is the expectation that their creditors will be thereby induced to grant them favors and indulgences, mostly by way of compounding their debts and releasing them therefrom. If such expectations could not lawfully be entertained, such assignments would rarely be made.

The rule stated in *Guérin* v. *Hunt*, 6 Minn. 375, that a fraudulent intent on the part of the assignor alone will avoid the assignment, is opposed to the weight of authority, (Bump on Fraud. Con. 363;) and the rule would promote frauds on innocent creditors rather than prevent them. Since the intention of a person, when material, may be proved by his own direct testimony as a witness, (*Berkey* v. *Judd*, 22 Minn. 287,) an assignment, fair and valid to all appearances, may be defeated by procuring the assignor to swear that his secret intentions, at and before the time of making it, were fraudulent; and the debtor may easily form a corrupt combination with one or two creditors, whereby they could avoid the assignment and seize on the entire assets, leaving the other creditors without remedy.

And where the assignee is himself a creditor, and, therefore, one of the beneficiaries, there can hardly be room for argument that he is a purchaser for a valuable consideration, within the meaning of the statutes of Elizabeth, and, therefore, the assignment is not affected by any fraud of the assignor of which he had no notice. *Holbird* v. *Anderson*, 5 Term Rep. 235; *Marbury* v. *Brooks*, 7 Wheaton, 556; *Brooks* v. *Marbury*, 11 Wheaton, 78.

*Start & Benedict* and *Jones & Gove*, for respondent.

GILFILLAN, C. J. This is an action for taking and con-

verting personal property. The plaintiff claims title to the property under an assignment to him by James P. McClelland, for the benefit of the creditors of the latter. The defendant was sheriff, and had levied upon the property as the property of McClelland, upon executions against him. The issue was as to the validity of the assignment. It was in the usual form of such assignments, authorizing the conversion of the property into money, by sale, as soon as the assignee should be able, and, after paying debts and taxes due the United States and the state, and the expenses, etc., of executing the trust, to distribute and pay the remainder, *pro rata*, among the creditors of the assignor, and, if there should be any surplus after paying such creditors, to pay over such surplus to the assignor. The jury found a general verdict in favor of the defendant, and the court also submitted to them, for their special finding, this question : " Did the assignor, McClelland, make this assignment with the intent and for the purpose of thereby effecting a compromise with his creditors?" To which the jury returned the answer, " Yes." The proposed compromise which the evidence tended to prove, and to which the special verdict relates, was this : Prior to the assignment McClelland made an effort to compromise with all his creditors upon his paying 50 per cent. in full of their demands, except the firm of which the plaintiff was a member, who were to receive their demand in full. A majority of the creditors had agreed to accept the proposed compromise, but others had refused to do so. By the schedules attached to the assignment the debts of McClelland are stated at $19,982.40, and the value of his assets at $13,675.

After the proofs closed, the plaintiff submitted to the court certain requests for instructions to the jury, mainly abstract propositions so far as regards the fact found by the special verdict, which fact must control the result of the controversy. So far as these propositions have any application to the fact as found, they are, in substance, these :

*First*, that the fact that the assignment was made with the intent and for the purpose of thereby effecting a compromise with McClelland's creditors did not render the assignment fraudulent; *second*, that, to render the assignment void as to the assignee, by reason of fraudulent intent on the part of the assignor, the assignee, when he took the assignment, must have had notice of such intent.

It is the intent with which conveyances of property are made, and not the terms in which they are expressed, that determines their validity as against the creditors of the assignor. If such intent be in any manner to hinder, delay, or defraud the creditors, they are void as against the creditors intended to be hindered, delayed, or defrauded, although they may be so expressed as, if carried out according to their terms, there would be no such effect. Assignments of all the debtor's property for the payment of his debts are tolerated, although there is incidental to them the delay necessary to the conversion of the property into money, and its distribution among the creditors. In this respect they may be regarded as an exception to the rule. But no other delay than such as is reasonably necessary to the application of the property to the payment of the debts is permitted. On this ground a provision in an assignment, allowing the assignee to sell on credit, renders the assignment void. *Greenleaf* v. *Edes*, 2 Minn. 264; *Nicholson* v. *Leavitt*, 6 N. Y. 510; *Brigham* v. *Tillinghast*, 13 N. Y. 215.

Also, the sole purpose of the assignment must be to immediately appropriate the debtor's property to the payment of his debts. The reservation of any benefit or advantage to the debtor, before his debts shall be fully paid, will avoid the assignment. A discharge from his debts, without full payment, is such a benefit or advantage to the debtor as, if the assignment exact it as a condition of participating in the distribution, will avoid the assignment. *Wakeman* v. *Grover*, 4 Paige, 23; s. c., (*Grover* v. *Wake-*

*man,)* 11 Wend. 187. That case goes so far as to hold that, if a release of the debt is exacted as a condition to the right to a preference provided in the assignment, it renders the assignment void. Mr. Justice Sutherland says, (11 Wend. 200 :) "But where, instead of directly distributing his property among his creditors as far as it will go, he places it beyond their reach by an assignment, not merely for the purpose of saving it from one particular creditor, to be given to another or to be equally divided among all, but for the purpose of enabling him to extort from some or all of them an absolute discharge from their debts, as the condition of receiving a partial payment, he perverts the power to a purpose which it was never intended to cover, and which the principle on which the right to give preference is founded will not justify."

The assignment in this case was executed, as found by the jury, with the intent and for the purpose of thereby effecting a compromise with the assignor's creditors. The purpose in executing it, then, was to place the property beyond the reach of creditors, in order to give the assignor time, and to place him in position, to be able to bring the creditors to compound their debts. To effect this, delay in appropriating the property to the payment of his debts would of course be necessary. The immediate application of the property to the demands of the creditors would be inconsistent with the purpose to effect a compromise by means of the assignment, and *vice versa.* The intent to effect a compromise by means of the assignment includes the intent to delay the execution of the trust expressed in it, at least so long as might be necessary for the assignor to ascertain if the creditors would compromise. This was an intent to delay beyond the delay which might be necessarily incident to the execution of the trust to sell the property and pay the proceeds to the creditors, and was, therefore, fraudulent. The intent was also thereby to secure a benefit to the assignor, to wit, a discharge from his debts without

full payment, and without even the application of all his property upon those debts. For these reasons the assignment was, as between the assignor and his creditors, void.

It has been decided by this court that an assignee, in an assignment for the benefit of creditors, is not regarded as a purchaser for a valuable consideration, when the assignment is assailed for fraud upon the creditors, and that knowledge in the assignee of the assignor's fraudulent intent is not necessary to enable the creditors to avoid the assignment. *Gere* v. *Murray*, 6 Minn. 305. That decision is in accordance with the weight of authority, and with principle. .

Judgment affirmed.