A. F. LESHER, Assignee, *vs.* J. E. GETMAN, Sheriff, and others.

July 2, 1881.

**Assignment for Benefit of Creditors—Fraudulent Intent.**—The rule of law, that a fraudulent intent on the part of the assignor will vitiate an assignment for the benefit of creditors, is not changed by chapter 44, Laws 1876, (Gen. St. 1878, *c.* 41, §§ 23–33,) entitled " An act to protect creditors of assignors, and to regulate the duties of assignees." That statute simply regulates the mode of executing such conveyances, and the manner of executing the trusts created thereby, leaving the question of their validity to be determined by the existing rules of law, except so far as expressly provided by the statute itself.

**Findings too Vague to Justify Judgment.**—The findings of fact in this case considered, and *held* so vague and indefinite that the court would not be justified in construing them as amounting to a definite and positive finding of the fact that the assignor executed this assignment with intent to hinder, delay or defraud his creditors, so as to justify them in ordering final judgment for appellants upon the facts found.

Appeal by defendants from a judgment of the district court for Dodge county, where the action was tried before *Brown*, J., (acting for the judge of the 5th district,) a jury being waived.

*Rogers & Rogers* and *A. J. Edgerton*, for appellants.

*Jones & Gove* and *C. H. Benton*, for respondent.

MITCHELL, J.  In October, 1878, one Hageman executed to plaintiff a deed of assignment of all his property, for the benefit of his creditors.  Plaintiff accepted the trust, qualified, and took possession of the property.  Subsequently, the defendant Getman, as sheriff, under several executions against Hageman, levied upon the property in question, and took it from the possession of plaintiff.  Plaintiff then brought this action for damages for such alleged wrongful taking. Defendant justifies under the executions, and alleges that the assignment referred to was made by Hageman with intent to hinder, delay and defraud his creditors, in that it was made for the purpose of obtaining a settlement with his creditors, and of forcing them to settle and compromise their just claims against him for a small per cent. thereof.  This allegation of fraud was denied in the reply, and raised the principal issue in the case.

The action having been tried without a jury, the court made and filed its findings, the following of which is the only one here material:

"The assignment, the acceptance on the part of the assignee, the giving of the bond, and all of the acts of the parties thereto, and in relation to the transaction, as well as the purport of the instruments themselves, indicate that it was intended by the parties to be a transaction under and pursuant to the laws of this state in relation to assignments for the benefit of creditors; and I find that the transaction was so intended to be.  But I further find that, prior to and at the time of making the assignment, the said Hageman had been led to believe that by making it he could the more readily procure a compromise with his creditors, and, from the evidence, I am impressed with the belief that his supposition that the assignment could and would be used to effect that object was at least one of the chief considerations which operated upon his mind to induce him to make it, and I so find the fact to be; but whether he expected to gain this end by compulsion, or by other inducements, does not so clearly appear.  I find nothing in the evidence, however, indicating or tending to show that the assignment was not of all his property (not exempt from execu-

tion) or that his property was not fully and completely turned over for the benefit of all his creditors, to be shared by them *pro rata.*"

From this finding of fact, the court found, as a conclusion of law, in substance, that this assignment, having been made under chapter 44, Laws 1876, (Gen. St. 1878, *c.* 41, §§ 23–33,) "to protect the creditors of assignors and to regulate the duties of assignees," the intent of the assignor in making it was immaterial, because, under the provisions of this act, the assignee, by accepting the trust and giving a bond, became an officer of the court, and the property assigned was under the control and management of the court, and any intent on the part of the assignor to hinder and delay his creditors, or to compel or induce a compromise, was instantly defeated by the very act of making the assignment. For this reason he held the assignment valid, and ordered judgment for the plaintiff. From the judgment so entered defendants appeal to this court.

We are clearly of opinion that the learned court below adopted an erroneous view of the object and effect of the statute of 1876. It is in no sense a statute authorizing the execution of assignments for the benefit of creditors. The very title of the act indicates this fact. The power to make such assignments is not derived from or dependent upon this statute. They are the voluntary acts of the debtor. No statutory authority can exact them, and, when made, they partake of the nature of a contract. The statute simply recognizes them as an existing mode of conveyance, and assumes to regulate the mode of executing them, and to define the duties of assignees, and thus give creditors more effectual means of control over the acts and proceedings of both assignor and assignee, but leaving the question of their validity (except so far as expressly changed by the statute itself) to be determined by the existing rules of law. Burrill on Assignments, § 14.

It has long been well settled, both in this state and elsewhere, that the intent of the assignor in making such an assignment is the material consideration in determining its validity, and that a fraudulent intent on the part of the assignor will vitiate an assignment, whether such intent appear from the face of the instrument, or from extrinsic evidence. It has also been decided in this court, in accordance with the

great weight of authority elsewhere, that the assignee, under such an assignment, does not stand in the position of an innocent purchaser for a valuable consideration; and, therefore, the fact that he had no knowledge of the fraudulent intent of his assignor will not cure the fraud. *Gere* v. *Murray*, 6 Minn. 213 (305, ;) *Guerin* v. *Hunt*, Id. 260 (375;) *Bennett* v. *Ellison*, 23 Minn. 242. These rules have been neither annulled nor in anywise modified by the act of 1876. Many states have long had statutes regulating the execution and administration of these assignments similar to our own; and in no case that we can discover has it ever been held, or even claimed, that such a statute had any such effect. On the contrary, it will be found that in all cases involving the validity of assignments executed under these statutes, wherever the question arose, the intent of the assignor in making the assignment has been considered the material consideration in determining its validity, precisely as if no such statute existed.

This brings us to the consideration of the finding of fact upon the question of the fraudulent intent of the assignor already quoted. Appellants' contention is that it is equivalent to finding that the assignor executed this assignment with the intent and for the purpose of thereby effecting a compromise with his creditors, and that, therefore, the conclusion of law was not justified by the findings of fact, but that, on the contrary, under the doctrine of *Bennett* v. *Ellison*, 23 Minn. 242, the court below should have found, as a conclusion of law, that the assignment was void; that, therefore, this court should not simply grant a new trial, but should, upon the facts found, order judgment for defendant. This finding of fact is so vague and indefinite, and, in some of its parts, apparently somewhat inconsistent, that we have felt some doubts as to its proper construction, and as to just what facts the court intended to find. Its language in one part certainly tends very strongly to sustain the construction placed upon it by the defendants, for it states that, prior to and at the time of making the assignment, the assignor had been led to believe that, by making it, he could the more readily procure a compromise with his creditors; and the court further states that he is impressed with the belief that his (assignor's) supposition that the assignment could and would be used to effect that object was, at least, one of the chief con-

siderations which operated upon his mind to induce him to make it, and that he so finds the fact to be. But he immediately follows this by saying that "whether he expected to gain this end by compulsion, or by other inducements, does not so clearly appear." Moreover, he had previously found that "it (the assignment) was intended by the parties to be a transaction under and pursuant to the laws of this state in relation to assignments for the benefit of creditors." He also finds that there was "nothing in the evidence * * * tending to show * * * that his (assignor's) property was not fully and completely turned over for the benefit of all his creditors, to be shared by them *pro rata.*"

When the court made these findings, he had the case of *Bennett* v. *Ellison* in mind; and if he had considered that the facts brought the case within the rule there laid down, he would doubtless have so found in definite and unambiguous language. A mere hope or expectation on the part of an assignor that a compromise will be consummated will not vitiate an assignment; nor will a mere belief or expectation that the execution of an assignment will aid or further a compromise, and the fact that such a belief or expectation had an influence upon the mind of the assignor in inducing him to execute it, avoid the instrument, unless there be coupled with or included in this an intent to delay the execution of the trust, or to use or manage the assignment in some way inconsistent with the due and proper execution of the trust which it creates, in order to bring about the desired compromise. The opinion of the court in *Bennett* v. *Ellison* shows that the verdict of the jury in that case was construed and understood as including and implying the existence of such intent. We do not, after mature deliberation, feel warranted in holding these findings in the case at bar, when all considered together, as amounting to a positive and definite finding of facts sufficient to bring the case up to this standard, or to justify us in ordering final judgment for appellants instead of simply directing a new trial. The fact that the court, under the view of the law taken by him, deemed the intent of the assignor immaterial, is quite probably the reason why he was less definite in finding upon the subject. Under the circumstances, we

v.28—7

deem it the proper as well as safest course to adopt, to reverse the judgment and remand the cause for a new trial, when this issue may be definitely and fairly passed upon.

Judgment reversed and new trial ordered.