## HAYS vs. HAYS.

An *award* is good, however informal and untechnical be a parol *submission*, if the *award*, followed up by the acts of the parties, recognizes the authority of the arbitrators : *it was accordingly held*, in this case, where there was a submission of matters in controversy to a *justice of the peace*, to be tried by him *or by a jury* if either of the parties should demand a *venire*, and where the parties submitted their proofs to the jury, who found a *verdict* in favor of the plaintiff, (the proceedings on the hearing being in all respects conducted as on trials in justices' courts) that *prima facie* the verdict might be considered *an award*, and be given in evidence under a count of *insimul computassent* in *assumpsit;* and that an account thus stated by arbitrators cannot be opened and corrected.

It was, however, *further held* that the transaction being of an equivocal character, it was competent for the defendant to prove, in an action, upon the finding as an *award*, that the hearing before the jury was in fact the *trial of a cause* in which the parties had interpleaded and issues had been joined; and for the refusal of a court to admit such evidence, a *venire de novo* was awarded.

What shall be deemed a good *submission* and *award*, where the language is untechnical, considered; and cases cited and commented upon.

*Error from the Albany common pleas. Robert Hays sued   [ *364 ] John R. Hays in the court below, and declared against him in *assumpsit* on the *money counts* including an *account stated*. The defendant pleaded the general issue. The plaintiff produced in evidence a paper writing, bearing date 26th December, 1836, signed by him and the defendant in these words ; " We, Robert Hays and John R. Hays, both of the town of Bern, do hereby agree to *submit* to Lyman Dwight, justice, all suits, actions and causes of action, trespass or trespasses, dues and demands, which we or either of us have against each other, up to this date, *to be tried by the said justice or a jury if either of us demand a venire*, except two suits now pending before the said justice, and also except a division of a certain

piece of land we have a deed for in common, and except all slander snits. This trial to be had before the first day of *February* next." *Dwight*, the justice named in the paper, testified that it was executed in his presence ; that afterwards, to wit, on the *third day* of *January*, 1837, the parties appeared before him, and agreed to proceed to trial under the above agreement on the *twenty-first* day of the same month—on which day they again appeared before him, and said they were prepared to proceed to trial under the agreement ; that on the request of Robert Hays he issued a *venire*, and delivered it to a constable, who returned it with a panel of jurors summoned by him, from which a jury was drawn and sworn. The parties submitted their accounts to the jury, who, after having heard all the proofs and allegations of the parties, found for the plaintiff (Robert Hays) $67,29 damages, *and one dollar each for themselves*, besides the usual costs. That he, the witness, on the same day entered a *judgment* upon the verdict thus rendered for $67,29 *damages*, and $15,85 *costs*, in pursuance of the submission *as he understood it*. On his cross-examination he stated that at the time the stipulation was entered into, he was a *justice of the peace;* that when the parties appeared before him, Robert Hays was called and answered as *plaintiff* and John R. Hays as *defendant ;* that the *venire* was issued as in ordinary cases to try an issue joined between the parties; that the jurors were drawn and sworn as *usual in justices' courts, that he *presided* as a justice of the peace, conducted the trial, and swore the witnesses in the usual form of trials in justices' courts ; that he overruled questions to witnesses, and decided questions upon the admissibility of evidence without consulting the jury, and administered the usual oath to the constable who took charge of the jury. The witness was asked by the defendant's counsel whether *he* had not stated to the jury who heard the proofs before him on the *twenty-first* day of January, that he did not know whether they were acting as *jurors* or *arbitrators ;* that they might find as much as they pleased for the *plaintiff*, and that *if* they were not arbitrators he could reduce their finding to *fifty dollars*. This inquiry was objected to by the plaintiff's counsel, and overruled by the court, who observed that in quashing the *appeal* of John R. Hays in that case, they decided that the *submission* rendered the proceedings before the justice an *arbitration;* and that upon this trial they would not admit any testimony to impeach the proceedings, unless *corruption* in the arbitrators was offered to be shown. The plaintiff rested, claiming to recover only the sum of $67,29 with the interest thereof, amounting together to the sum of $75,10. The defendant offered to prove that when the parties appeared before the justice, previous to the issuing of the *venire*, regular *pleadings* were put in and *issues joined on the matters to be tried :* which evidence thus offered to be given was rejected by the court. The defendant also offered proof of various other matters respecting the trial or hearing had before the justice, which the court also re-

fused to receive. The jury, under the direction of the court, found a verdict for the plaintiff for the sum claimed. There was a *bill of particulars* delivered by the plaintiff, and the defendant on the trial objected that there was a *variance* between it and the *proof*, which objection was overruled by the court. Judgment was entered on the verdict, and the defendant, on a *bill of exceptions*, sued out a writ of error.

*C. M. Jenkins*, for the plaintiff in error.

*H. E. Wheaton*, for the defendant in error.

*\*By the Court*, COWEN, J. The question is on the legal effect [\* 366 ] of the proceedings before Dwight. The written submission could not, perhaps, have been pursued to a binding award *by six men*, without the co-operation of both parties; though I should think that one of them might have proceeded before Dwight alone. His award on an *ex parte* hearing would have been valid, unless the power conferred on him had been revoked by the adverse party. The stipulation was to submit the matters in difference to him, *or* to a jury if either party should demand one. The latter alternative was, perhaps, void for uncertainty; and no award was ever made by Dwight. It was difficult to say what the parties meant by a jury before an arbitrator. The terms have no legal meaning or application except as connected with a court which proceeds by a jury. Shall it be twelve, or six, or what number? For the purpose of a submission which would, in itself, sustain the award, or what is so called, the stipulation must, therefore, perhaps be laid out of view.

But though the submission be *void* when taken by itself, it may undoubtedly be looked at in connection with the subsequent acts of the parties; and the whole be resorted to as evidence that the six men who finally sat, heard the evidence, and made an award, were acting in effect as arbitrators, in whatever language they may have been spoken of; in whatever character regarded; or in whatever phrase their award may have been pronounced. The stipulation in its terms contemplated an award, not a verdict or judgment. Following out its express meaning, in this respect, the parties appeared before the men called a jury, and introduced their allegations and proofs, on which an award was pronounced, as they intended it should be. No matter what the forms under which the parties ostensibly proceeded. They were present, mutually assenting to, and promoting the whole, with the obvious intent to settle their controversies. These acts of themselves operated as a submission, an authority to the six for proceeding as arbitrators. The award is sustainable, like that in *Matson* v. *Trower, Ry. & Mood. N. P. Cas.* 17, where it was made by an \*umpire, where [ \*367 ] the arbitrators had no authority to appoint. The parties having

attended without objection, this act was held, *per se*, a submission to the umpire; and the amount of his award was recovered in assumpsit. So in *Wharton* v. *King*, 1 *Mood. & Rob.* 96, the *attorney* of the party had submitted his cause without any authority; and a judge's order was taken to sanction the submission. But the defendant attended the first meeting for a hearing; the plaintiff not being there, the former did not again attend. Yet held that he was bound by an award afterwards made, though it was *ex parte*, because, by attending only once, he had adopted the act of his attorney. This the court held equivalent to an original authority. Apply these cases. (Let us entirely dismiss the written submission as a nullity; and yet it will be seen there was evidence to establish one.) Awards are favored; and a submission may be made out by circumstantial evidence. In this view, the six arbitrators had the power to proceed, which they did do; pronouncing an oral award in the form of a verdict. I need scarcely observe that the form is also a matter of entire indifference; and the whole proceeding will be looked to in order to collect the intent. In *Matson* v. *Trower*, the award was thus: " I am of opinion that Messrs. Matson & Co. are entitled to claim of Messrs. Trower & Co. £134, for non-performance of their contract for 50 puncheons of brandy." Chief Justice Abbott said: " The words of the instrument are indeed not formal or technical, but they amount in substance to an award." Some of the proceedings too, in that case, were agreed to have been quite contrary to the notions of legal men. The parties were each secretly examined on oath, the opposite one being shut out of the room; but this was held to be no objection. There is no doubt that the parties may, if they choose, adopt all the solemn forms of a trial; and come out with a verdict which shall enure as an award.

As to the objection for *variance:* 1. Arbitrators are agents of both parties. Hence their acts are considered as the acts of the parties themselves; and a balance found by the arbitrators is considered as a balance [ *368 ] struck by the parties *on an account stated by themselves. It is on this theory, to an award, made pursuant to a submission not under seal, has been held admissible in evidence under the count on an *insimul computassent. Keen* v. *Batshore*, 1 *Esp. R.* 194, went upon that theory. Eyre, Ch. J. said, " that, as there was no arbitration bonds, he should take the transaction respecting the reference as a statement of accounts *between the parties;* and an *admission of the balance due to the plaintiff:* and that it could therefore be given in evidence under the money counts, and particularly as an account stated." There the plaintiff being summoned for his particulars, furnished for his bill the sum awarded. That was done here. There the objection was, that it could not be received under the money counts, to which the answer already mentioned was given. It is said that an account stated may be opened and corrected; whereas an award is a bar to all actions concerning matters comprehended in the submission. Many

cases were cited by counsel to prove this ; a thing which no one will deny ; nor would for ages before *Keen* v. *Batshore* was decided. That the cases showing an award to be a bar, are incompatible with the idea of its being an account stated by the parties, may be true if we take the latter in its strict sense. In that, it means a settlement by the parties themselves or their ordinary agents. But this only proves that arbitrators are a more solemn kind of agents, through whose acts the parties may, if they please, estop themselves, just as they may by their own acts, if they will throw their settlement into the form of releases under seal. But in all other respects, the analogy between an award on parol submission, and an account stated, is very close. An *accounting*, like an *award*, changes the nature of the demands on which it is based : and the party may declare on it as a distinct substantive cause of action ; nor need he, in his evidence, at least generally, pay any regard to the nature of the claims on which it was founded. 2 *Phil. Ev. Am. ed.* 1839, *p.* 124, 126, *and the cases there cited. Keen* v. *Batshore*, therefore, so far from being overruled, is fully sustainable on principle and analogy, besides being recognized as the settled law by *the latter and more authoritative English books on pleadings and [ *369 ] evidence. Vide, among others,* 2 *Phil. ut sup.*, 1 *Saund. Pl. & Ev.* 221, *Am. ed.* 1829. Moreover, it sanctions a convenient mode of declaring ; and, since the practice of compelling the delivery of a bill of particulars, the generality of the form can work no prejudice to the defendant.

The principle of this action was, therefore, correct, and the evidence for the plaintiff below properly received by the court of common pleas. It was, at least, sufficient to go to the jury. It was competent for them to say that the action of the parties throughout bore reference to, and the alleged award took its character from the original stipulation—in that no verdict, no judgment, no limitation of amount was mentioned. And if none of these was intended by the parties, it is difficult to consider the self styled verdict in any other light than as an award. There was nothing in Dwight's evidence conclusively to characterize the proceedings as those of a justice's court, under the statute. The alleged arbitrators were unanimous in their award, and it was otherwise sufficiently formal for the purposes of the general count. No formal issue or issues appeared to have been joined, or intended to be joined ; no formal pleadings interposed ; no original process issued. The jurors departed from the most familiar notions of jurisdiction in a justice's court, finding for the plaintiff $67,29, and for themselves one dollar each. Such was the case as it stood on the proofs of the plaintiff below. True the justice entered a judgment for the whole ; but that was on a misconstruction of the submission, which he thought contained, in effect, *a conditional confession of judgment* for the amount of the award. On a valid confession he is not confined to fifty dollars, but may enter judgment for any sum between that and $250.

But was this view of the case conclusive ?   The defence was founded on the fact that notwithstanding the strong indications of the whole being a mere arbitration, it was all the time intended as a judicial proceeding under the statute ; a thing which is by no means impossible.   I suggest-

[ *370 ]   ed that the clause of the written stipulation under which it *is claimed that the jury were summoned and acted, was void in itself as not designating with sufficient certainty the men who were to act as arbitrators.   Possibly that may not be so.   Let it be taken then to have been valid, and binding as a submission to such men as Dwight should select and conduct through the forms of a jury trial.   In either view it seems to me the common pleas gave it an effect much more stringent than could be claimed for any form of submission.   Looking at the case even as it stood before the defendant began his offers of proof; the proceedings before Dwight were so entirely equivocal as left it impossible for any one to say definitely that the written stipulation had not been altogether departed from. It may be said there was neither process nor voluntary issue, the only two forms in which a justice can acquire jurisdiction for the purposes of trial by jury.   2 R. S. 160, 2d ed. § 12.   Id. 173, § 93.   But surely we are not, at this day, to be told, that there must, in order to comply with the statute, be a technical issue.   Dwight swears that the parties appeared before him and presented their accounts ; and an issue, which means merely a claim on one side denied by the other, was doubtless in fact taken, if not several issues.   But if otherwise, the clause of the statute has never been literally construed.   It has been said not to cover an issue in law, nor to admit of a jury against a party who has not pleaded.   But where a trial goes on without objection upon the merits before a jury, on points in dispute, the object of the law is answered.   An issue is thus substantially raised and tried within the meaning of the statute ; and an objection would not be tolerated even on certiorari, much less collaterally as an impeachment of the jurisdiction. The doctrine of mutual assent and waiver would alike stand in the way. Neither formality in pleadings, nor indeed any pleadings at all are essential to sustain proceedings in a justice's court.   It is enough if it appear, on the whole, that the merits were fairly tried without formal objections being interposed.   Suppose a judgment and execution on a verdict without a technical issue ; would any one think of the justice or the party who sued it out being a trespasser ?

[ *371 ]   *If a party will proceed in a manner which bears every essential mark of a regular law suit, it seems to me he cannot complain that the question shall, at least, be submitted to a jury whether it was not really a suit, when he comes to claim that it was something else.   It was easy for the plaintiff below to have defined his position, before the justice, by denying to him and his antagonist, that he intended to proceed under the statute.   John R. Hays might then have revoked what was thus considered

a submission ; and so secured his right of certiorari or appeal. Here I perceive by the bill, his appeal was dismissed on motion, because it was brought upon a decision of arbitrators.

But if, as the defendant below offered to show, there were in truth pleadings, and an issue on which every thing proceeded, and no one understood the matter to be an arbitration, we then have a court of justice ; not only in form, but substance. The stipulation, or any other act or agreement of the parties to submit, would not prevent their waiving the submission, and instituting and pursuing a regular suit. A joining of issue by consent, is as ef_fectually the commencement of a suit, as if coerced by process of law. The stipulation could neither take away jurisdiction, nor be used as conclusively giving to a regular law-suit the character of an arbitration. The evidence offered would have brought into the proceedings a more distinct feature, viewed in connection with which, the plaintiff's case must, perhaps, have been considered an entirely different thing from what he had presented in his declaration—a verdict and judgment ; not an award ; not an account stated. I say a verdict and judgment. The case might have been that, if any thing. But, as thus presented, the proceedings might well be thought to have enured neither, as an award nor judgment ; for both the pretended verdict and judgment were in amount considerably beyond the jurisdiction of the court, and therefore void. The radical error of the court below, lay in holding that the stipulation gave a hue to all the subsequent proceedings so fixed that it could not be changed. We think clearly, therefore, the offer to prove an issue joined was improperly overruled. And even *inde-    [ *372 ] pendently of that, the case seems to have been proper for the jury.

The judgment must therefore be reversed ; a *venire de novo* to issue from the court below ; the costs to abide the event.