## BRADY *vs.* THE MAYOR, &c. OF BROOKLYN.

The 40th section of the act incorporating the city of Brooklyn, which authorizes, the common council to cause all the streets within the first seven wards of the city to be graded, levelled, gravelled and paved, to assess the expenses upon the owners of the lands benefitted, and to collect the money, necessarily gives to them the power to make the requisite contracts, and devolves upon them the duty of performing them, on their part.

Where there is a capacity to contract, with a liability to pay, there is generally a power to arbitrate. And the fact that one of the parties is a corporation makes no difference.

Corporations have all the powers of ordinary parties, as respects their contracts; except when they are restricted, expressly, or by necessary implication.

A submission to arbitration may be made by a corporation, by a resolution or ordinance adopted at a meeting thereof. It need not be under the corporate seal.

It is not necessary the proceedings of a corporation, at its corporate meetings, should be authenticated by its seal.

Whenever a corporation is acting within the scope of the legitimate purposes of its institution, all its contracts, whether sealed or unsealed, written or by parol, are valid.

The form of a submission to arbitration is a matter of indifference. It is sufficient if it appears, from the acts of the parties, that they intended to arbitrate, and that the decision of the arbitrators should have the effect of an award.

Where the common council of a city passed a resolution directing a sum which had been reported by arbitrators to be due to a contractor for extra work in grading and paving a street, to be added to the assessment for grading and paving that street; *Held* that such resolution was a substantial acknowledgment, on the part of the corporation, of the extent of the debt, and a promise to pay it. And that after such resolution had been assented to by the contractor, the claim became valid against the corporation to the extent specified therein; and that such resolution could not afterwards be rescinded except by the mutual agreement of the parties.

Where there are no arbitration bonds given, upon a submission to arbitrators, the proceedings upon the reference are considered as a statement of accounts between the parties, and an admission of the balance due. In such a case the award can be given in evidence under the money counts, and particularly as an account stated.

MOTION to set aside the report of the sole referee. The action was assumpsit, brought in the court of common pleas of the county of Kings. The declaration contained the common counts for work and labor and materials, together with the

money counts, and an account, stated. The defendants plead-
ed the general issue, and gave notice of set-off. By an order
of the court of common pleas, made at the May term, 1847, the
cause was referred to A. C. Bradley, sole referee, by whom it
was heard. Upon the hearing before him, the plaintiff proved
the execution of an agreement between himself and the defen-
dants for the grading and paving of a part of Union-street, in
Brooklyn, dated July 25th, 1845, in the manner and for the
price therein specified. It also appeared that the work was
done by the plaintiff; that shortly after commencing the work
the plaintiff went before the street committee and complained
that the filling requisite to raise the grade of that part of Union-
street, at and adjacent to Columbia-street, was greater than
represented as required, by the profile exhibited, and that he
wished to be discharged from his contract. The committee
refused to do any thing in the matter, and said the plaintiff
must finish his contract, and that if he had any claim for extra
work he must present it after completing his contract. It ap-
peared from the minutes of the common council, that on the
20th of July, 1847, the street committee reported on the petition
of the plaintiff for compensation for extra filling on Union-street,
in favor of referring said claim to three persons as referees, two
to be chosen by the common council and one by the petitioner;
which report was adopted. On the 14th of September, 1847,
the street committee presented the report of Messrs. Talmage,
Dougherty and Dimon, referees, who had been appointed in the
matter, by which they awarded to the plaintiff the sum of
$787,88, in addition to the amount the work would come to at
the prices specified in the contract; and they stated the costs of
the reference to be $30. Upon which a resolution was passed
directing the street commissioner to include in the assessment
of grading and paving Union-street the sum of $817,88. The
plaintiff then proved that on the 27th of February, 1847, this
resolution was rescinded by the common council. Such other
portions of the testimony as are material, are referred to in the
opinion of the court.

Brady *v.* The Mayor, &c. of Brooklyn.

The referee reported that the plaintiff was entitled to recover of the defendants the sum of $823,23.

*J. L. Campbell,* for the plaintiff. 1. Independent of any award, the facts proved constitute a valid cause of action. And from the evidence adduced on the trial, it appears that the plaintiff was legally entitled to a greater amount of damages than was awarded by the referee. 2. The fact that in this case the common council were acting on behalf of others, did not render their submission to an arbitration invalid. (*Shelf* v. *Bailey,* 1 *Comberbach,* 183.    *Burrell* v. *Jones,* 3 *Barn. & Adol.* 47. *Davis* v. *Ridge,* 3 *Esp.* 101.    *Weed* v. *Ellis,* 3 *Caines,* 254.) 3. The referees, Talmage, Dimon and Dougherty, were duly appointed arbitrators. (*Diedrick* v. *Richley,* 2 *Hill,* 271.) 4. Their award was rightly given in evidence under the count upon an account stated. (*Hays* v. *Hays,* 2 *Wend.* 363.    *Keen* v. *Batshore,* 1 *Esp.* 194, 5.) 5. Their award was final and conclusive; and even though wrong, cannot be set aside. (*Mitchell* v. *Bush,* 7 *Cowen,* 185.) 6. Even if this could be done, the defendants have expressly affirmed its validity, by directing the amount reported due to the plaintiff to be included in the assessment. 7. Even if the common council had no power, by their submission, to bind the parties concerned in the improvement, they have bound themselves. (*Smith* v. *Van Nostrand,* 5 *Hill,* 419.    *Moss* v. *Rossie Lead Mining Co., Id.* 137.    *State of Indiana* v. *Woram,* 6 *Id.* 33.)

*J. Humphrey,* for the defendants. 1. The plaintiff having entered into a written contract, must be bound by it; unless he can show fraud, or error caused by the act or omission of the defendants. 2. If there was such fraud or error, he should have rescinded the contract altogether, and sued for the whole value of the work. 3. But there is no evidence of fraud, nor of error. If there were any error, it was attributable to the negligence of the plaintiff. It appears, from the testimony, that he examined the ground. And he might have made an accurate estimate by the profile. 4. The profile is no part of the con-

tract. It is not referred to in the contract. The contractor has access to it as an aid to his estimates; but there is no warranty of its correctness. If a specification at all, it is only such as respects the grade line which is drawn with reference to the tide level. 5. But if the profile were a part of the contract, it could not have misled the plaintiff. Not as to the amount of filling; for in this respect it is not pretended that it is incorrect. The only pretence is that the plaintiff was misled in taking an observation on the ground. But even this could not be true— for Columbia street was up to its grade at or near the intersection of Union-street. Nor as to the amount of earth to be excavated. If the surface had been changed, it could not have escaped the observation of the plaintiff, and the date of the profile should have put him upon inquiry. 6. No liability results from the alleged reference to Talmage and others. It was not an arbitration. The common council could not refer such a subject to others; and they did not, if they could. (*Bac Abr. Arbit. C.* 21, *E.* 4, 13.) If it was an arbitration, the action should have been on the award. (*Bailey* v. *Lechmere*, 1 *Esp.* 377. *Whitehead* v. *Tattershall*, 1 *Adol. & Ellis*, 491.) 7. There is no evidence of an account stated. 8. The referee has allowed for the pretended extra filling. In this, he is clearly wrong; for the profile itself would have precluded any error here. For the deficiency of earth, the award could not have exceeded $300.

*By the Court*, STRONG, P. J. The contract signed by the plaintiff did not specify the level on which Union-street should be graduated. That ordinarily depends upon a profile on file in the office of the street commissioner. Such profile is generally exhibited to the contractors, and forms the basis of their estimates. The profile on file in the office of the street commissioner, at the time when the contract was made, was inaccurate. It represented the proposed level at the intersection of Union and Columbia-streets as eight feet above high water mark. The corporation had at first graduated the streets in that part of the city at that height, and drawn the profile accordingly;

but had, a short time before making their contract with the plaintiff, concluded to raise such streets about six feet higher. No alteration, however, had been made on the profile. The change required a great addition of labor and materials in that part of Union-street lying between Columbia and Hicks-street, which had to be filled up. The profile also contained an inaccurate representation of the surface of the ground between Hicks and Henry-street. That was represented as considerably higher than the proposed level; whereas the earth had been recently removed, and that part of the street was not above the requisite height. The consequence of that was that the plaintiff was unable to procure the materials there, which he had expected, to fill up the adjoining cavities, and had to seek for them at a greater distance. The plaintiff discovered the discrepancies between the profile and the work which was required of him, soon after he commenced operations; and he thereupon applied to the street committee to be discharged from the contract, or to be allowed for the extra work. The committee refused to discharge him, but directed him to go on; and told him if he should have any claim for extra work he must present it after finishing the contract. And he accordingly proceeded, and finished the work. It is apparent, however, that there was a misapprehension as to the intended grade, or level, at the time when the contract was made. The plaintiff supposed that it was to be eight feet, the defendants that it was to be fourteen feet above high water mark. The defendants doubtless inferred that the profile had been altered so as to correspond with their last determination. That such alteration had not been made was attributed to them or their agent, and could not in any manner affect the rights of the plaintiff. It is true, he stated to one of the witnesses that in making his estimates he did not rely upon the profile, as he knew that was inaccurate; but he did not state any particulars except as to the representation of the surface of the ground: and it is apparent from all the testimony, that he must have supposed it to be substantially correct. As there is no pretence that he had been made acquainted with the last resolution of the common

council, he had no other guide than the profile as to the proposed grade of Union-street. True, other contractors had commenced filling up the streets to the greater height, but they had proceeded with that work no farther south than to Degraw-street, which is the second north from Union-street. At that distance a spectator might not have ascertained that an elevation of six feet would raise the ground in Degraw-street above the existing level of Columbia-street where it crosses Union-street. At any rate it is evident that the plaintiff did not come to that conclusion.

If the profile constituted a part of the contract, then the plaintiff performed extra work for which he has a valid claim against the defendants. If, however, the contract was made in reference to the resolution of the common council to raise the grade of the streets in that vicinity, then, although the plaintiff may have miscalculated the work, greatly to his disadvantage, he could not, independently of the award, recover for the alleged extra labor from the corporation. Whether the profile was, under the circumstances, a part of the contract or not, was a question of fact for the referee to decide. There was testimony both ways; and if he came to the conclusion that it was, and the case turned upon that, his report should not be set aside as against the weight of evidence. But the plaintiff's claim rested, as I think, mainly upon the award. Both parties submitted the matter to arbitrators, a majority of whom were selected by the defendants. They awarded to the plaintiff $787,88 for the extra work, and the defendants, at a subsequent meeting, virtually assented to the award by passing an ordinance to raise the money.

It is contended by the defendants that they had not the power to submit the matter to arbitrators. Without inquiring how far they may be estopped by their solemn acts and the consequent conduct of the plaintiff from raising this objection, I am clear that it is not well founded. By the 40th section of the act incorporating the city of Brooklyn, the common council are authorized to cause all the streets within the first seven wards (in which the street in question is situated) to be graded, levelled,

Brady *v.* The Mayor, &c. of Brooklyn.

gravelled and paved, to assess the expenses upon the owners of the lands benefitted, and to collect the money. This necessarily gives them the power to make the requisite contracts, and devolves upon them the duty of performing them on their part. It matters not for whose peculiar benefit the contracts are made, (although they are undoubtedly to a considerable extent for the benefit of the city:) the common council is a necessary party. The owners of the land are never parties. Indeed it is not absolutely ascertained who in particular are benefitted, until after the work has been commenced. The common council have then all the rights, and are liable to all the responsibilities of parties. They can agree to the compensation before, or after, the work has been performed. If payment is refused or deferred, they alone are sued. Assuredly no action could be maintained against the owners of the land. Where there is a capacity to contract, with a liability to pay, there is generally a power to arbitrate. (*Shelf* v. *Bailey,* 1 *Comb.* 183. *Weed* v. *Ellis,* 3 *Caines,* 254. 3 *Esp.* 101. 3 *Barn. & Ald.* 47.) The fact that one of the parties is a corporation, can make no difference. Corporations have all the powers of ordinary parties as respects their contracts, except when they are restricted, expressly, or by necessary implication. They have often arbitrated in cases where they are parties. Their capacity to do so has not, so far as I know, been heretofore questioned. One of the cases before us at the present term, (*The Mayor, &c. of New-York* v. *Butler,*)(*a*) turned mainly upon an award where a corporation was a party. The validity of the award in that case was warmly disputed, but no objection was raised to the competency of the corporation to submit to arbitration.

An objection was also raised to the manner in which the arbitrators were appointed. That probably was based on the supposition that the acts of a corporation, to be binding, must be under their corporate seal. The submission to arbitration was by a resolution or ordinance adopted at a meeting

(*a*) Ante, p. 325.

of the corporation. Their proceedings at their corporate meetings are not authenticated by seal, nor is it necessary that they should be. It is well settled, too, that whenever a corporation is acting within. the scope of the legitimate purposes of its institution, all its contracts, whether sealed or unsealed, written or (through its agents) by parol, are valid. (*Bank of Columbia* v. *Patterson,* 7 *Cranch,* 299. *Mott* v. *Hicks,* 1 *Cowen,* 519.)

The submission may have been somewhat informal; but the form is a matter of indifference. It is sufficient if it appears from the acts of the parties that they intended to arbitrate, and that what should be done by the arbitrators should have the effect of an award. All that is very clear from the acts of both parties. The defendants referred the claim to three persons, two to be chosen by themselves and one by the plaintiff. Subsequently the report of those persons on the subject of the claim is presented to the defendant, and they direct money to be raised " in accordance with the report." The inference is that the whole was an arbitration, conducted by persons selected by the parties; and such inference arises from the recorded acts of the defendants.

But whatever objection there may have been either to the capacity of the corporation to submit to arbitration, or to the manner in which such submission was made, there can be no doubt as to their power to agree to pay for graduating their streets, whether before or after the work has been performed, and however, the amount may have been ascertained or determined. The resolution to add the sum reported due by the arbitrators to the assessment for the work, was substantially acknowledging the extent of the debt, and a promise to pay it. When assented to by the plaintiff, as it was, the claim became, if it had not been before, valid against the defendants to that extent. Of course the resolution could not then be rescinded except by the mutual agreement of the parties. The last resolution of the corporation was consequently inoperative.

The objection that the action was misconceived is also untenable. It is well settled that when there are no arbitration bonds, the transaction respecting the reference is considered as

a statement of accounts between the parties, and an admission of the balance due.   Therefore the award can be given in evidence under the money counts, and particulary as an, account stated.   (*Keen* v. *Batshore*, 1 *Esp.* 194.   *Hays* v. *Hays*, 23 *Wend.* 363.)

The motion to set aside the report of the referee must be denied with costs, and the report must stand confirmed.

