THIS case came up on a writ of error to the Superior Court in and for New Castle County, and was heard before Saulsbury, Chancellor, and Wootten and Wales, Judges. For a statement of the case in the court below see ante. p. 163.
The ruling of the court below in the case and now assigned for error in this court was that by the laws of this State no corporation aggregate, whether incorporated by the legislature of this State or of any other State, can be appointed an administrator in this State or can sue as an administrator in the courts of this State.
Higgins, for the plaintiff in error: The rule allowing corporations of one State to contract and sue in their corporate name in another may now be considered as the general law of the *Page 417 
land. 2 Kent's Com. 285 and note (a); Ang. Ames on Corp.,secs. 372, 373; Henriques v. Dutch W. I. Co., 2 Ld. Raym.
1532; S. C.,. 1 Str. 612; Bankof St. Charles v. Barnales, 1 C. P.
569; Silver Lake Bank v. North, 4 Johns. Ch. 370; Amer.Ins. Co. v. Owen, 15 Gray 491. While the legislature may have power to prohibit foreign corporations from contracting in the State, until it does so contracts so made will be enforced. Ang. Ameson Corp. 374; Bank of Augusta v. Earl, 13Pet. 519. It may now be considered a settled principle of law that a corporation in one State or country may not only sue but make valid contracts in another, provided their charter warrants such contracts, and there is no positive diability by statute for a corporation to make such contracts in the State where they are made. As a general rule, personal rights and contracts have no locality, and the laws of comity apply in their fullest extent between the several States of the Union. 2 Kent's Com. 285, note (a); Bank ofAugusta v. Earl, 13 Pet. 519. There is no principle of public policy in this State that forbids a corporation acting as an executor or administrator of the estate of a deceased person. It is not to be found in any statute of the State, but the contrary appears in the act of assembly incorporating The Peninsular Trust, Safe Deposit and Insurance Company with power to administer on the estates of deceased persons, passed in 1873, 14 Del. Laws 714. It is said by Black-stone and other writers that a corporation cannot be an executor or administrator, but the reason given is not that it is against the common law or against its policy; the weight of authority, however, is in favor of their common-law ability. 1 Williams on Executors
198; Swin., Pt. 5, sec. 9; Godol., Pt. 2, ch. 2, p.
76; ch. 6, p. 85; Roll's Abr. Tit. Exrs.
(T) 7; Tol. on Exrs. 30: 2 Bac. Abr. Tit. Exrs.
A 2, p. 375. Redfield, the latest writer on the subject, says: "It was once doubted but was subsequently ruled that a corporation aggregate may be named executor." Corporations may also become trustees where the trusts are within the general scope of the purposes for which they are instituted, or even where they are merely collateral to its general purposes, but germane to them. Vidal v. Guard'sExecutors, 2 How. 187; 2 Kent's, Com. 279; Ang. Ames on *Page 418 Corp. 168; Perry on Trusts 42, 43.; McDonogh v.Murdeck, 15 How. 367.
The corporation named as plaintiff brings this suit by virtue of the power expressly granted in its charter by the State of Pennsylvania under letters of administration granted to it in that State on the estate of Theophilus T. Deringer, deceased, who was residing and domiciled in that State at the time of his death and by authority of the statute of this State, Rev. Code, chap. 89. sec. 56,p. 552, which dispenses with the necessity of ancillary administration in such a case in order to empower such an administrator to sue in this State a debtor of his decedent residing here, clothes the foreign administrator on his producing his foreign letter duly authenticated with all the power of a domestic administrator, and among them with the same power which the latter possess of bringing suit in this State. It prescribes no qualification for the foreign executor or administrator but leaves that to the State granting the foreign letters, and every requirement of it can be fulfilled by the corporation plaintiff in this case. It can enter into bond with surety, if required to truly account for all the personal estate of their decedent in this State which shall come to his knowledge, and faithfully administer and distribute the same according to law. Ang. Ames on Corp., secs. 110, 111, 256, 257, 258, 259; 9 Wend. 384; 33 Penna. State Rep. 33.
And it contains, we submit, the only authoritative indication or expression of the policy of this State in regard to the power of foreign executors and administrators to sue in the courts of it, in contradistinction to other foreign suits in them, all of whom may at the option of the defendant be required to give security for the costs of the suit.
G. B. Rodney, for the defendant in error: The demurrer in this case runs back to the first legal defect in the pleadings, which was in the narr and in the bringing of the suit. A corporation cannot be an administrator or perform any function of an administrator in this State unless by special authority conferred upon it as such by the legislature of this State. Even in Pennsylvania it has no such power, except by virtue of the special act of the legislature of that State which created it and *Page 419 
expressly conferred such a capacity upon it. But can such an act, with nothing like it existing or thought of in this State as a mode of providing for executors and administrators to settle the estates of deceased persons who die almost daily within our own limits, have any operation or effect beyond the limits of that State, and is, or can there be any custom or practice or dictate of inter-State courtesy or comity that requires us to give it the same operation and effect here as if it had been enacted by the legislature of our own State? As to the right or power at common law of a corporation aggregate being an executor or administrator, it does not exist, because, it cannot take the oath for the due execution of the office. 1 Williams onExecutors 125. And although this objection may be obviated in England by the appointment on behalf of the corporation of a person styled syndic to receive administration, who is sworn like any other administrator, we have no law or practice to allow it to be done by proxy in this country. A corporation can have no legal existence out of the sovereignty by which it is created, as it exists only in contemplation of law and by force of law; and when that law ceases to operate and is no longer obligatory, the corporation can have no existence. Ang. Ames on Corp., sec. 161. Such is the elementary and fundamental principle on this subject laid down by the authority cited and ruled in 13 Pet. 282, 589; 14 Pet.
383, and 73 Ill. 143. And although by common practice and usage it may be recognized and make contracts and sue on them in other States and sovereignties, it presents a very different question when such an artificial creation of the law which exists solely by force of it claims to be the legal and living representative of a real though dead man in another State where such a thing was never before heard of and is wholly un-provided for by law in it and which could not now be appointed his administrator in it under any law which we have on the subject. The same fundamental principle is also stated by Judge Story in his work on Conflict of Laws. No State or nation can by its law directly affect or bind property out of its own territory or bind persons not resident therein; and no sovereign has a right to give the law beyond his own dominions, and if he attempts it he may be lawfully refused obedience, for wherever *Page 420 
the foundation of laws fail, there their force and jurisdiction fail also. Story's Conflict of Laws, sec. 20. And speaking of the comity of States and nations in this respect, he says every nation must be the final judge for itself, not only of the nature and extent of the duty but of the occasions on which its exercise may be justly demanded. And certainly there can be no pretense to say that any foreign nation has a right to require the full recognition and execution of its own laws in other territories when those laws are deemed oppressive or injurious to the rights or interests of the inhabitants of the latter, or when their moral character is questionable or their provisions are deemed impolitic or unjust. Ibid., sec. 33. Could anything be more at variance with the polity and policy of this State on this important subject than this novel and extraordinary method of administering the estates of deceased persons? But this is emphatically an age of corporations, both great and small, of all sorts and descriptions, and after all no one, perhaps, should be surprised at it out of this Slate. Could any foreign administrator or one appointed or created under a special statute of another State take out ancillary letters of administration in this State under our general statute providing for the appointment of executors and administrators in any case in which he could not take out original letters of adminstation under it, and which it is clear this corporation aggregate could not have done had it come into this State in the first instance and applied for original letters under it? I have no hesitation in saying that it is quite as clear that it could not.
But the law on this subject of suits by or against executors and administrators in the courts of any other State or country than those from which they drive their power and authority to act as such is so clearly and distinctly laid down by Judge Story in his work before referred to, that I may confidently claim that it is absolutely conclusive upon the question involved in this case and against the right of this Pennsylvania corporation administrator to maintain this action in the courts of this State.
In regard to the title of executors and administrators derived from a grant of administration in the country of the domicile of the deceased, it is to be considered that the title cannot de jure *Page 421 
extend as a matter of right beyond the territory of the government which grants it and the movable property therein. As to movable property situated in foreign countries, the title, if acknowledged at all, is acknowledged ex comitate, and of course it is subject to be controlled or modified as every nation may think proper with reference to its own institutions and its own policy and the rights of its own subjects. And here the rule to which reference has been so often made applies with great strength, that no nation is under any obligation to enforce foreign laws prejudicial to its own rights or to those of its own subjects. Persons domiciled and dying in one country are often deeply indebted to foreign creditors living in other countries where there are personal assets of the deceased. In such cases it would be a great hardship upon such creditors to allow the original executor or administrator to withdraw those funds from the foreign country without the payment of such debts and thus to leave them to seek their remedy in the domicile of the original executor or administrator, and perhaps there to meet with obstructions and inequalities in the enforcement of their own rights from the peculiarity of the local law.
It has hence become a general doctrine of the common law, recognized both in England and America, that no suit can be brought or maintained by an executor or administrator, or against any executor or adminstrator, in his official capacity in the courts of any other country except that from which he derives his authority to act in virtue of the probate and letters testamentary, or the letters of administration there granted to him. But if he desires to maintain any suit in any foreign country he must obtain new letters of administration, and give new security according to the general rules of law prescribed in that country, before the suit is brought. So on the other hand, if a creditor wishes a suit to be brought in any foreign country, in order to reach the effects of a deceased testator or intestate situated therein it will be necessary that letters of administration should be there taken out in due form, according to the local law, before the suit can be maintained, for the executor or administrator appointed in another country is not suable there, and has no positive right to or authority over those assets, neither is he *Page 422 
responsible therefor. The right of a foreign executor or administrator to take out such new administration is usually admitted as a matter of course, unless special reasons intervene to vary or control it; and the new administration is treated as merely ancillary or auxiliary to the original foreign administration, so far as regards the collection of the effects and the proper distribution of them. Still, however, the new administration is made subservient to the rights of creditors, legatees, and distributees who are resident in the country where it is granted, and the residuum is transmissible to the foreign country only when a final account has been settled in the proper tribunal where the new administration is granted upon the equitable principles adopted by its own laws in the application and distribution of the assets found there. Story's Conflict of Laws,secs. 512, 513; Whart. on Conf. of Laws, sec. 611. Such is the explicit doctrine of the common law on the subject, both in England and America, as announced by the first authority cited, and which is supported by a list of reported decisions referred to both in England and in this country so exceedingly numerous that I have not thought it necessary to name or produce any of them, and many of which ruled in this country, as clearly recognize that the doctrine thus announced applies to the States of this Union as well as to foreign nations or countries.
Spruance, for the plaintiff in error: Neither the statute nor the practice in this State requires an oath to be taken by an administrator; but if a company is incorporated for the express purpose of performing, among others, such a trust, and an oath should be required of it, the president of it, who is the official representative and in general the sole executive organ of the corporation, would be the proper person and competent to take it. Our statute not only recognizes the ability of foreign administrators to sue in the courts of this State, but expressly provides for it, and has thereby abolished, or at least has modified, the principle of the common law in that respect in this State; and if the condition prescribed in it on which it is to be done in certain contingencies provided for in it is not sufficient to meet the precise or particular objection which has *Page 423 
been raised in this case, it is the province of the legislature and not of the courts to so perfect it as to meet and avoid it in cases like this, for if a judgment should be rendered in this suit in favor of the plaintiff, a foreign administrator, as appears on the record, without any application made for bond and security pursuant to the condition prescribed in the statute, it would unquestionably be a good and valid judgment. And unusual and novel as such a thing may seem, the legislature of a State undoubtedly has the power to incorporate a company to administer the estates of deceased persons, as well as to insure their lives or their property while living.Aug. Ames, secs. 110, 111, 256, 257, 258, 259.
This is an action of assumpsit oh certain promissory notes and due bills which were made by the intestate of the defendant to the intestate of the plaintiff. The pleas are non assumpsit, the act of Limitations, pleneadministravit, except the sum of two hundred and twenty-two dollars and eighty-four cents, and a special plea to the effect and in substance that the plaintiff is a foreign corporation existing under the laws of another State with power to administer the estates of deceased persons; "that such power is repugnant to the policy and prejudicial to the interests of this State and of its citizens, and that the action against this defendant being in that character cannot be maintained," etc. The replication to this plea sets forth that the plaintiff is a corporation created by and organized under the laws of Pennsylvania, and by said laws "is authorized to accept and execute the office and appointment of executor or administrator or other trustee, and to accept and execute all such trusts of every description not inconsistent with the laws of the State of Pennsylvania, as may be committed to it by any person or persons whatever, or by any corporation or register of wills, or by any court of record, whether of the said State of Pennsylvania or any other State or of the United States; that the plaintiff hath been duly appointed and qualified as administrator as aforeseaid of Theophilus T. Deringer by the Register of Wills of the City and County of Philadelphia in the State of Pennsylvania, and by virtue of said power, office, and appointment *Page 424 
is entitled to maintain this action," etc. To this replication there was a general demurrer, on which the court below gave judgment for the defendant. The plaintiff assigns this judgment as error.
It is an elementary rule that a general demurrer reaches back through the whole record and attached upon the first substantial defect in the pleadings. Under the operation of this rule the question of the right of the plaintiff in its capacity as an administrator to maintain an action in the courts of Delaware is brought before us for consideration. For although the special plea may be defective, as contended by the plaintiff's counsel, yet, if it appears from a full inspection that the declaration is substantially wrong in its inception, in that the plaintiff has no standing in court, judgment cannot be given for the plaintiff because a bad plea is sufficient for a bad declaration (Gould's Pldg. 475), and cannot give a right of action where none exists. If, therefore, at any stage in the progress of a cause a material error should be discovered, as a want of jurisdiction of the cause of action or of the person of either of the parties, it would be the duty of the court to take notice of the error and render judgment accordingly. Or, if at any time it appears that to sustain an action would be contrary to good morals or public policy, the court will not hesitate to dismiss it. The record in this cause upon an entire view of it, as well as the argument of counsel, presents the question whether the plaintiff can act as an administrator in Delaware.
It is not denied that the plaintiff in the State of its creation is clothed with the power to accept the office of an executor or administrator, and to perform all the duties incident to either trust; but the objection is made that the laws of Delaware regulating the granting of letters testatmentary or of administration, while not expressly disqualifying or excluding a corporation, nowhere recognize that a corporation can be an administrator, and, as the power to act in that representative character cannot be granted under the general statute to a domestic corporation, therefore a foreign corporation claiming to act under letters issued in another jurisdiction cannot be permitted to execute its power here or to bring an action in our courts. And it is *Page 425 
further objected that in the absence of positive law a corporation is disqualified and incompetent at common law from being an executor or administrator.
To fully understand the extent and force of the first objection it will be necessary to examine the statute. The law provides that the register of the county in which the deceased last resided, or of the county in which he had any real or personal estate, shall grant letters of administration to some one or more of the persons entitled to the residue of the personal estate; if none of those who are capable will accept, then to one or more of the creditors, and lastly, to any suitable person. The first duty of the administrator is to take and subscribe an oath for the faithful performance of his duties, and then to give a bond to the State with surety to be approved by the register, with the usual condition as to the inventory and appraisement of the goods and chattels, collecting debts due and paying claims against the estate, distributing the residue of the personalty according to law, and rendering a just and true account within a certain time. He is also required to make an affidavit verifying the inventory and list of debts in making his return to the register. Amended Code, ch. 89, sec.
8 et seq. These provisions apply to the granting of original or domiciliary letters to the principal administrator of the deceased, who at the time of his death resided in the State or was possessed of property real or personal within its jurisdiction. But where the domicile of the deceased was in another State, and letters have been granted to an administrator in that jurisdiction, the law of this State has provided a very simple substitute for ancillary or subsidiary administration, so that the foreign administrator in most cases may proceed without any delay to take possession of the effects of the deceased and to collect the debts due to the estate. The law, in fact, recognizes the foreign administrator upon the mere production of his commission duly authenticated under the seal of the office or court by whom it was issued, and at once invests him with authority to represent the deceased in the same manner as if he had been originally appointed by a register in this State; and it is only upon the happening of certain contingencies *Page 426 
that he will be compelled to" take any proceedings of a public or judicial nature in order to confirm his authority.
These contingencies are pointed out in the same chapter, sections 46, 7, and 8. "If the deceased be indebted to an inhabitant of this State in a sum not less than twenty dollars, the executor or administrator, before he shall recover judgment in court, shall cause such letters to be recorded in the register's office in one of the counties and shall also, with sufficient surety or sureties to be approved by the register, become bound to the State in a penalty double the best estimate of the personal estate of the deceased in this State, with condition to be void if he shall truly account for all the personal estate of the deceased in this State which shall come to his knowledge, and faithfully administer and distribute the same according to law." The court may stay proceedings in any action by such administrator, and any person in the State having any personal property of the deceased, may refuse to pay or deliver the same until the letters have been recorded and the security given, but a payment or delivery without such recording or security shall be good. A judgment shall not be reversed nor set aside as irregular on the ground that the recording and security have been omitted unless the special objection shall have been made and overruled, but the court may stay the proceedings in the judgment until those requirements have been complied with. It will be observed that the foreign administrator may act by virtue of the original power granted to him and without any additional warrant from a register in Delaware, and that it is only upon the refusal of a debtor or bailee to pay or deliver money or goods or chattels or upon direct application to the court that he is required to record his letters and give security. He is not obliged to fake the oath of office, to make the affidavit verifying the inventory and appraisement, or even to return an account of his receipts and disbursements to the officer who approved his security. The statute leaves him to settle his accounts with the office or court which first appointed him, and after the letters have been recorded and the security given, exercises no further control over him.
The question then to be determined in this branch of the case *Page 427 
is, Does the statute prescribe any condition or duty which the plaintiff, being a corporation, cannot perform, and hence is unable to maintain its action?
There would be a difficulty, perhaps an insuperable one, in a corporation not being specially authorized by the laws of this State performing the conditions necessary to qualify it to take out original letters as administrator in its corporate name namely, taking the oath and making the requisite affidavits, but in the present case no oath or affidavit is required, and the inquiry is brought down to the narrow point whether a corporation constituted as the plaintiff is with power to accept the office of administrator can execute a valid bond, such as is prescribed by the statute. The negative of this proposition was insisted upon by the defendant's counsel, but both the principle and the authority of adjudged cases lead to an affirmative conclusion.
The law in relation to the power, duties, and responsibilities of corporations, public and private, has been much and frequently discussed of late years both in the courts and by text writers. Many doctrines which were once held to be sound, proving un-suited to the demands and usages of business, have been overturned, while others once considered as of doubtful or uncertain authority have long since been accepted and settled as the law of the land.
It was laid down by Blackstone and the notion prevailed for some time that a corporation could not make a parol contract, and could speak and act only by its common seal. 1 Bl. Com. 474; but this technical rule of the common law soon gave way and vanished, and today a seal is no more necessary to render valid the acts and contracts of a corporation than of an individual, and in all cases where a natural person would be bound without a seal, a corporation would also be bound. 2 Kent's Com. 288. It was once questioned whether a corporation could maintain a suit beyond the jurisdiction in which it was incorporated, but Chancellor Kent, in 1820, in answer to such an objection, declared it to be well settled that foreign corporations could sue in their corporate name and could prove as a matter of fact, if it was denied, that they were lawfully incorporated. *Page 428 
4 Johns. Chan. 372. So, too, in regard to its liability to action it has been held that it may be made a defendant in actions ofassumpsit, trover, trespass, and for the publication of a libel, and even be indicted for malfeasance or nonfeasance. As to its power of making contracts and the kind of obligations a corporation may enter into, there would seem to be little room for serious doubt in the light of the later authorities. A corporation, being created for a specific purpose, can make no contract forbidden by its charter, or in general any contract which is not necessary, either directly or incidentally, for the objects of its creation. A. A. on Corp. 256. The exercise of the corporate franchise, which is the legislative grant of special privileges, cannot be extended beyond the letter and spirit of the act of incorporation; but the result of all the authorities is, that a corporation may by virtue of its implied powers, unless expressly or by necessary implication prohibited, make any contract, either as principal or surety, proper as the usual and ordinary means of carrying on its business under the circumstances under which it may be placed. Ibid. 258. In fine, a corporation has the power to do all things necessary to carry out the purposes for which it was incorporated which are not in violation of positive law. When acting within the scope of the legislative purposes of its institution, all its contracts, whether sealed or unsealed written or unwritten, are valid, and it has all the powers of ordinary persons within that limit. Brady v.The Mayor of Brooklyn, 1 Barb. 584. "It is a well-known principle," says Judge Thompson in Philadelphia andSunbury R. R. Co. v. Lewes, 33 Penn. 31, "that a corporation, like a natural person, has a right to carry on its legitimate business by all legal and necessary means not prohibited by law." Every corporation has power to make all contracts that are necessary and usual in the course of the business it transacts, as means to enable it to effect such object unless expressly prohibited by law or the provisions of its charter. Barry v. Mets.Ex. Co., 1 Sandf. Ch. 80. The authorities are numerous on this point. In all the cases the difficulty, if any, was not in ascertaining the principle, but in applying it to a special state of facts. The question here is, Would the execution of the administration bond be within the *Page 429 
implied powers of the plaintiff's charter? Its power to take the office and perform the functions of an administrator in the State of its corporate residence is clear and undisputed, and ex comitate
it should be allowed to exercise the same office here, unless to permit it to do so would be in violation of some positive local law. No such law has been referred to and it is believed that none such exists. Neither its charter nor any statute expressly or by implication prohibits it from making the bond, and the rule of law in such a case is, that when both the charter and statute are silent it has power to make all such contracts as are necessary and usual in the course of business as means to enable it to attain the object for which it was created. A. A. on Corp. 271. In DartmouthCollege v. Woodward, 4 Wheat. 636, the court says: "A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being a mere creature of the law, it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental toits very existence."
Secondly, it is objected that by the common law the plaintiff is not capable of being an administrator. Blackstone, among the disabilities of a corporation, includes its inability to be an executor or administrator, "for it cannot take an oath for the due execution of the office." 1 Bl. Com. 477. In Bacon's Ab. Tit.Executors and Administrators 2, the same doctrine is laid down on the same ground, but under a semble, and with these additional reasons: First, because corporations cannot be feoffees in trust for the use of others; and second, because they are a body framed for a special purpose. When the reason of a rule ceases, so does the rule itself. The plaintiff is not required to take an oath. It has been incorporated or "framed for the special purpose" of acting in the character and capacity in which it has come into court; and it is now well and long established that a corporation may be a trustee in the same manner as an individual, not only of real estate, but of personal property, to the same extent as private persons.Hill on Trustees 48 (and cases cited in the note).
Says Toller: "It now seems settled that corporations can be executors, and that on their being so named they may appoint persons styled syndics, *Page 430 
to receive administration with the will annexed, who are sworn like all other administrators. Such corporations as can take the oath of an executor are clearly competent," as, for instance, a corporation sole. Toller on Excs. 30. There is, then, no inherent disability or disqualification belonging to a corporation as such which excludes it from acting as an administrator, and it may accept the office if not prohibited by its charter, or forbidden by statute, whenever from the objects of its incorporation and the nature of its business it may become necessary and proper, and it is able to comply with the conditions prescribed by law as to giving bond, etc. Practically, the position of the plaintiff is meritorious and unobjectionable. With the express power contained in its charter to receive the appointment of administrator, and with its capital stock pledged as the security required for the faithful performance of its duties, it brings an action in its representative capacity for the recovery of a debt due to its intestate, and is met at the outset by technical rules, which whatever may have been the reason of their origin and adoption, have either become obsolete or have been so modified and relaxed as to be no longer of general application. The execution of the bond would, at the best, amount to little more than a form, and be without substantial benefit or necessity; but still the defendant is entitled to it, if it is insisted upon, and the plaintiff has a full and lawful power to execute it as it would have to make or indorse a promissory note, or accept a bill of exchange, or to execute any other description of bond which may be fairly and legitimately considered as necessary and proper in the usual course of its business. It has not been made to appear in what manner the interests of this State or of its citizens would be impaired, or in what way its policy would be invaded or subverted, by sustaining the plaintiff's action. Admitting that a corporation may be unable to act as an original administrator under the provisions of the general statute, it does not follow that it may not be recognized as a foreign administrator on the production of letters duly authenticated and giving bond. The word "persons" may extend to and include bodies corporate and politic as well as individuals. Amend. Code,ch. 5. If the plaintiff can give the bond, it does all that the law requires. *Page 431 
The rights of our citizens will not be endangered, their property rendered less secure, or the dignity of the State be diminished. If the policy of the State is to be inferred from the history of its legislation, the act of the General Assembly of Delaware of April 9th, 1873, incorporating a company for the special purpose, among others, of acting as administrator would be conclusive of that question. 14 Del. Laws 714. In the Bank of Augusta
4. Earle, 13 Pel. 585, cited by counsel on both sides, Chief Justice Taney, in the course of a learned and elaborate opinion, says: "When a court is called on to declare contracts * * * to be void on the ground that they conflict with the policy of the State, the line of that policy should be very clear and distinct to justify the court in sustaining the defense. Nothing can be more vague and indefinite than that now insisted on as the policy of Alabama. It rests altogether on speculative reasoning as to her supposed interests, and is not supported by positive legislation." The point made in connection with this that a corporation can have no legal existence outside of the sovereignty by which it is created, is not supported by argument or authority. The general principle is that a corporation created in one State can make no valid contract in another without the latter's sanction, express or implied; but it has been repeatedly decided that not only can a corporation make a contract in other States, but may be sued by service on its agencies in other jurisdictions. It has already been shown that it can sue in another State.
The great rule in the settlement of estates is, that the personal property is distributed by the law of the domicile, and that prevails where it does not conflict with the lex rei sito. To ascertain the existence of such conflict is not difficult. When a statute or the unwritten or common law of the State forbids the recognition of the foreign law, the latter is of no force whatever. When both are silent, then the question arises, Which of the conflicting laws is to have effect? Generally, force and effect will be given by any State to foreign laws in cases where from the transactions of the parties they are applicable unless they affect injuriously her own citizens, violate her express enactments, or arecontra bonos mores. And courts of justice in one State will, *Page 432 
out of comity, enforce the laws of another State when by such enforcement they will not violate their own laws or inflict an injury on some one of their own citizens. Bouv. Law Dic, Comity.
Chief Justice Waite, in the Pensacola Telegraph Co. v.The Western Union Telegraph Co., decided at the October term, 1877, of the United States Supreme Court, states the law on this subject briefly and clearly. "Upon principles of comity, the corporations of one State are permitted to do business in another, unless it conflicts with the law or unjustly interferes with the rights of the citizens of the State into which they come. Under such circumstances no citizen of a State can enjoin a foreign corporation from pursuing its business. Until the State acts in its sovereign capacity, individual citizens cannot complain. The State must determine for itself when the public good requires that its implied assent to the admission shall be withdrawn." Albany Law Journal,Vol. 17, p. 309; Story's Conflict of Laws 36, 37.
The law of ancillary administration is founded on the duty of every government to protect its own citizens in the enjoyment of their own property and the recovery of their debts, at the same time having due respect to the rights of foreign creditors. When the estate of a deceased person is solvent, there is no difficulty in applying its assets, and it is only in eases of insolvency that any question can arise as to the order of payment of debts, and in such cases the law of the situs prevails over the law of the domicile.
But that question has not been made here, there being no intimation that the estate which the plaintiff represents is not fully able to meet all lawful claims against it. The sole inquiry is as to the incidental or implied power of the plaintiff to comply with the requirements of the statute by giving the bond. This power it has, and, as there is no positive law, or definite and known state policy to prohibit or forbid its exercise of the duties of an administrator, there is no reason why it should not be allowed to maintain this action.
Saulsbury, Chancellor, concurred. Woollen, Judge,
dissented. *Page 433