CLAPP *v.* TITUS.

1. MUNICIPAL CORPORATIONS— COUNCIL— POWERS— STATUTE— EM-
   PLOYÉ — SERVICES — ORDER — REFUSAL OF PRESIDENT TO SIGN —
   MANDAMUS.
   Under the general village law (1 Comp. Laws, chap. 87, § 2769,
   subd. 26), providing that the council shall have authority to
   provide for the care, custody, and preservation of the public
   property, where, as the result of a conflict between the presi-
   dent and the council, the president had suspended the mar-
   shal, and the council, through its committee on fire and
   water, employed the suspended marshal, and allowed his
   claim for services in attending to the fire apparatus of the
   village, mandamus lies to compel the president to sign the
   orders for the amount allowed by the council; it appearing
   that, by reason of a fire having occurred, the apparatus was
   in need of the services rendered by relator, and that, without
   an appointment by the council, there would have been no
   one to care for it.

2. SAME—MANDAMUS—FORMALITIES—WAIVER.
   The fact that certain formalities were not observed in the pre-
   sentation of an account to the common council of a village
   does not affect the claimant's right to mandamus, to compel
   the president to sign orders therefor, where he did not put
   his refusal to sign the orders on that ground.

Certiorari to Van Buren; Carr, J.   Submitted October
4, 1904. (Calendar No. 20,651.)  Decided October 18, 1904.

Mandamus by Willis Clapp to compel Lincoln H. Titus,
president of the village of Paw Paw, to sign orders for
certain sums voted to relator by the common council.
There was an order denying the writ, and relator brings
certiorari.   Reversed.

*Barnard & Lewis,* for relator.

*Lincoln H. Titus* (*William G. Howard,* of counsel),
for respondent.

Moore, C. J. This is certiorari to review the action of the circuit judge in refusing to issue a mandamus to compel the respondent to sign two village orders voted to the relator by the village council, and countersigned by the clerk of the village.

This litigation grows out of an unfortunate difference of opinion between the respondent, who is president of the village of Paw Paw, and its village council. An ordinance of the village provides for the appointment by the president, by the consent of the council, of a village marshal and other officers, whose compensation shall be fixed by the council. It also provides for the appointment by the president, from the members of the village council, of certain committees—among them, a committee on fire and water. The president appointed this committee on fire and water. On April 12, 1904, he appointed James F. Bullard marshal, and Aaron Hathaway street commissioner. Upon the first of these appointments three of the trustees voted "No," and three refrained from voting. Mr. Hathaway's appointment was not consented to. At a meeting held April 18th the same appointments were sent to the council by the president, and neither one was assented to. It is not clear what actuated the council, unless it may be inferred from the opinion of the village attorney that, under the existing ordinances of the village, the duties of the street commissioner shall be performed by the marshal; and, in his opinion, one person only could be appointed to discharge the duties of the office of marshal and street commissioner. The relator was at this time village marshal. On the 18th of April, written notice was served upon him by the president of his removal from the office of marshal, and after that date the village was without a marshal. The village had a volunteer fire department, an engine house, a fire engine, and 1,500 to 2,000 feet of hose. After the president had removed the marshal, a motion was made at a regular meeting of the council that the relator be employed to collect electric light and other bills due the village, and care for the public

property, and to perform the duties theretofore performed, by the marshal. The president refused to put the motion, and refused to entertain an appeal from his decision. After the removal of the marshal, the committee on fire and water hired the relator to look after the engine house, the fire engine, and the hose. During the time a fire occurred, at which the engine and all the fire hose was used. The relator dried the hose, and did such work as was necessary to be done. The claims for these services were presented in writing to the council, and referred to the committee on claims, which reported in favor of the allowance, and all the trustees of the village voted in favor of the allowance. By direction of the council, orders were drawn by the clerk, which he countersigned. They were presented to the president for his signature. His claim was that the council were seeking to, in effect, appoint a village marshal, and that the committee had no authority to hire Mr. Clapp, and refused to sign the orders.

It goes without saying that property like an engine house, a fire engine, and fire hose should have some care. The village of Paw Paw was organized under the general law found in chapter 87 of the Compiled Laws.

Subdivision 26, § 2769, 1 Comp. Laws, in defining the powers of the council, says it shall have authority " to provide for the care, custody, and preservation of the public property of the village." In the history of the village, an emergency had occurred, growing out of the conflict between the president of the village and the council. We have no doubt that under such circumstances the council could, temporarily at least, provide for the care of the village property. This it undertook to do, first through its committee, and then by unanimously allowing the obligation which that committee had incurred. See *Portland Lumbering & Manfg. Co.* v. *City of East Portland*, 18 Or. 21, and the cases there cited; *McConoughey* v. *Jackson*, 101 Cal. 265; *Brady* v. *Mayor, etc., of Brooklyn*, 1 Barb. 584; *Hill* v. *City of Indianapolis*, 92 Fed. 467; 1 Dillon, Municipal Corp. (4th Ed.) § 463.

The circuit judge found that certain formalities in the presentation of the account had not been observed. The president does not, and did not put his refusal to sign the orders upon that ground. We think that feature of the case is fully covered by *Kriseler* v. *Le Valley*, 122 Mich. 576, and cases there cited.

We think the circuit judge should have granted the writ of mandamus, and it is so ordered.

The other Justices concurred.